**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Schrum, ) | |
| ) | |
| Plaintiff, ) | No. CIV 04-619 PHX RCB |
| ) | |
| vs. ) | O R D E R |
| ) | |
| Burlington Northern and Santa ) | |
| Fe Railway Company, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On February 12, 2004, Plaintiff Steve Schrum ("Schrum") filed a complaint in this matter under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. (doc. 6). This lawsuit, originally filed in the Northern District on Illinois, was transferred to this Court on March 29, 2004. Id. Thereafter, on November 9, 2004, Defendant Burlington Northern and Santa Fe Railway Company ("BNSF") filed a third-party claim against Chemical Lime Company of Arizona ("Chemical Lime") seeking contractual indemnity. Third-Party Complt. (doc. 24); Amended Answer and Third-Party Complt. (doc. 32).

On January 13, 2006, BNSF moved for summary judgment on all of

Schrum's claims. Motion (doc. 65). Chemical Lime joined BNSF's motion, and this motion was fully briefed on April 11, 2006. Reply (doc. 107). In addition, BNSF filed a Motion to Strike Untimely Disclosed Expert Opinion (doc. 67), as well as a motion for summary judgment on BNSF's indemnification claim against Chemical Lime. (doc. 70). Chemical Lime filed its own motion for summary judgment on Schrum's claims, as well as BNSF's indemnification claim. (doc. 68).[1] Lastly, Chemical Lime filed a motion to strike portions of Schrum's statement of material facts filed in response to Chemical Lime's motion for summary judgment. Chem. Lime's Mot. to Strike (doc. 104).[2] All of these motions were fully briefed on April 7, 2006. Reply (doc. 105).

Having carefully reviewed the arguments submitted by the parties on all of these matters, the Court now rules.

**I. Undisputed Facts**

Schrum sued BNSF under FELA claiming that he sustained respiratory injuries while working on BNSF trains that serviced third-party defendant Chemical Lime's chemical lime plant located in Nelson, Arizona ("the Plant"). Specifically, Schrum alleges that the inhalation of lime, coal, and coke dust at the Plant caused him to suffer, among other things, chronic asthma, chronic bronchitis, depression, severe mood swings, vertigo, and obsessive-compulsive disorder.

---

[1] Oral argument is requested by at least one of the parties on each of these motions. Finding oral argument unnecessary, the Court shall deny such requests.

[2] Schrum did not file a response to Chemical Lime's motion to strike.

-2-

1  Schrum began working for BNSF in June of 1994. At his pre-
2 employment physical exam, Schrum disclosed that he had a history of
3 asthma.
4  In 2000, Schrum was ordered by BNSF to service the Plant in
5 Nelson, Arizona. Schrum's job duties as a switchman required him to
6 walk on the ground alongside train cars to spot them under pipes
7 where the cars were loaded with lime. The movement of the train
8 cars under the loading pipes stirred up lime dust. Unlike the lime
9 company employees, Schrum was not able to wear a dust mask due to
10 his job requirement that he verbally communicate with the engineer.
11  Over a period of time during 2002 and 2003, Schrum saw Dr.
12 Charles Lindsay with complaints of trouble breathing and cough. In
13 July of 2003, Dr. Lindsay released Schrum to return to work with
14 the restriction that he not be exposed to toxic inhalants. Schrum,
15 however, claims that BNSF did not accommodate this restriction and
16 did not permit him to return to work.

17 **II. Standard**

18  To grant summary judgment, the Court must determine that the
19 record before it contains "no genuine issue as to any material
20 fact" and, thus, "that the moving party is entitled to judgment as
21 a matter of law." Fed.R.Civ.P. 56(c). In determining whether to
22 grant summary judgment, the Court will view the facts and
23 inferences from these facts in the light most favorable to the
24 nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp.,
25 475 U.S. 574, 587 (1986).
26  Summary judgment is appropriate "against a party who fails to
27 make a showing sufficient to establish the existence of an element
28 essential to that party's case, and on which that party will bear

-3-

the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a case, the moving party is entitled to a judgment as a matter of law. Id.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. Id. at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. Id.

A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. See id. at 250. Finally, if the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. See, e.g., California Architectural Build. Prods., Inc. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987).

**III. Discussion**

FELA provides that "[e]very common carrier by railroad...shall be liable in damages to any person suffering injury while he is employed by such carrier...for such injury or death resulting in

whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. The statute is not a worker's compensation statute. See Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994). "FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.'" Id., citing Ellis v. Union Pacific R. Co., 329 U.S. 649, 653 (1947). A FELA plaintiff must demonstrate a causal connection between defendant's negligence and the alleged injuries. See Claar, 29 F.3d at 503.

In the case at bar, BNSF asserts that summary judgment should be granted in their favor on all of Schrum's claims, because Schrum has failed to satisfy the causation element required under FELA. BNSF Mot. Summ. Judg. (doc. 65) at 4. Specifically, BNSF argues that Schrum has failed to produce expert medical testimony that is required to establish a causal connection between BNSF's allegedly negligent conduct and Schrum's injuries. Id. BNSF relies on the Ninth Circuit case Claar v. Burlington Northern R.R. Co., 29 F.3d 499 (9th Cir. 1994), to support its argument.

In Claar, the plaintiffs claimed that they suffered multiple ailments stemming from their exposure to various chemicals while working in a railroad facility. 29 F.3d at 500. On appeal, the Ninth Circuit found that the plaintiffs' injuries were not the type that a juror would be qualified to determine whether the railroad's negligence played a part in causing. Id. at 502. The court

1  determined that expert testimony was necessary to satisfy the
2  causation element of FELA.  Id.

> Plaintiffs, not having proffered any admissible expert testimony, have no evidence that workplace exposure to chemicals played any part, no matter how small, in causing their injuries. Accordingly, there is no genuine issue of material fact concerning even the modicum of causation FELA requires, and summary judgment was appropriate.

Id. at 504.  BNSF contends that the facts and claims here are the same as those reviewed in Claar.  Thus, BNSF argues that, without expert testimony establishing a causal connection between BNSF's allegedly negligent conduct and Schrum's injuries, Schrum cannot establish a prima facie FELA claim.

In response, Schrum does not deny that he lacks expert testimony on the matter of causation.  Resp. (doc. 98).  However, Schrum asserts that expert testimony is not required in this case. Id. at 7.  Schrum relies on the Second Circuit case Ulfik v. Metra-North Commuter Railroad, 77 F.3d 54 (2d Cir. 1996), to support his argument.  Id.

In Ulfik, the plaintiff alleged that he was injured in a fall caused by dizziness, which in turn was caused by inhalation of paint fumes in a railroad tunnel.  77 F.3d at 55-56.  Schrum notes that the court in Ulfik held that expert testimony was not necessary in that case because "the trier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness."  Resp. (doc. 98) at 7, citing Ulfik, 77 F.3d at 59-60.  The court distinguished the facts of that case from those of Claar by noting that "special expertise was thought necessary [in Claar] because of the esoteric nature of the injuries alleged-dyscalculia and

-6-

spelling dyspraxia." <u>Ulfik</u>, 77 F.3d at 59. In the case at bar, Schrum asserts that the same analysis should apply here because he alleges the non-esoteric injury of aggravated asthma caused by exposure to lime and coal dust. Resp. (doc. 98) at 7. The Court disagrees.

At the outset, the Court notes that Schrum, in his answers to BNSF's interrogatories, alleges numerous injuries in addition to "aggravated asthma." Exbt. A (doc. 71) at 2.[3] However, in his response to BNSF's motion for summary judgment, Schrum fails to address any of these other claims. Schrum does not cite any evidence that establishes the causation element in relation to all of his claimed injuries, except for "aggravated asthma." Resp. (doc. 98) at 8-9, 12. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>

---

[3] Schrum's answers to BNSF's interrogatories states the following:

6. Describe in detail all injuries, complaints and symptoms, whether physical, mental or emotional, which Plaintiff claims has [sic] been caused, aggravated or otherwise contributed to by the conditions about which Plaintiff complains in his complaint.

**ANSWER:** Chronic asthma, Chronic bronchitis, shoulder separation, aggravation, wheezing, coughing, sleep deprivation, vertigo, depression, severe mood swings, sexual dysfunction, constantly scratching head causing sores, lack of energy, change in appetite, feeling worthless and hopeless, suicide thoughts, lack of concentration, obsessive compulsive disorder (must have new soap each bath; no one can touch or look at his food; must use clean glass for each drink; does not like people near him because they contaminate his air), yelling and fighting, nothing seems right, and he will disappear for hours for no reason.

Exbt. A (doc. 71) at 2.

-7-

Corp. v. Catrett, 477 U.S. 317, 322 (1986). Thus, BNSF is entitled to a judgment as a matter of law on these claims. Id.

Regarding his claim of aggravated asthma, Schrum argues that expert medical testimony is not required to determine causation. Resp. (doc. 98) at 6-7, 9-12. Accordingly, Schrum, in his response, lists evidence that he asserts sufficiently establishes the causation requirement. Id. at 8-9. Specifically, Schrum notes that Frank Burg, Dr. Norman Fernando, Dr. Raja Khuri, and the Material Safety Data Sheet ("MSDS") either testified or reported that, generally, inhaling dust or lime can cause breathing problems. Id. In addition, Schrum notes that he testified "that inhaling coke, coal and lime dust at the Lime Plant made him sick and aggravated his asthma[.]" Id. at 8. Lastly, Schrum states that Dr. Lindsay testified that Schrum's "exposure to toxic inhalants at work (lime dust) aggravated [his] asthma[.]" Id.[4] The Court concludes that none of this evidence sufficiently establishes causation in this case.

Through the parties' statements of facts, the Court has determined that Burg is Schrum's only retained expert in this matter. PRSOF (doc. 100) at 3. Burg is not a medical doctor and has no degrees or certificates in medicine, medical training or chemistry. Id.; see also Exbt. F (doc. 66) at 40-41. He teaches classes for Occupational Safety and Health Administration compliance personnel on asbestos and silica, as well as a course in

---

[4] The Court notes that within this listing of evidence, Schrum does not provide the Court with any specific citations from deposition testimony or documents in the record where these statements can be found.

1  ergonomics.  Id. at 39-40.  In addition, Burg testified that he
2  could not offer any opinion on whether Schrum's medical conditions
3  are, in fact, related to the specific exposure at the Plant.  Exbt.
4  F (doc. 66) at 77-78; PRSOF (doc. 100) at 5.

> Q. ...What specific medical problems in plaintiff do you believe were caused by the alleged exposures?
> A. I am not a doctor of the plaintiff. I can tell you in general what happens.
> Q. I want to know – Right now my question, Mr. Burg, relates to the plaintiff.
> A. Well, I can't answer that question. I will have to talk to his doctor.
> Q. Fair enough.
> A. I can tell you in general what the cause of the effects of dust are on humans.

Id. at 77:23-78:9.

   Dr. Fernando is BNSF's expert who conducted an Independent Medical Examination ("IME") on Schrum.  Reply (doc. 107) at 9.  In his report, Fernando testified that,

> ...Mr. Schrum does not have occupational asthma. He does not have reactive airways dysfunction syndrome or irritant induced asthma which are entities that are caused by sudden onset to a toxic inhalation. He has lifelong asthma that has progressed in recent years and needs more aggressive and consistent therapy.

Exbt. E (doc. 108) at 6.  Although Fernando, in his report, notes that dust can exacerbate asthma symptoms, he does not state that Schrum's alleged exposure at the Plant caused his respiratory condition.  Id. at 5.

   Dr. Khuri is BNSF's former chief medical officer.  BNSFSSOF (doc. 108) at 27.  Schrum concedes that he never retained Khuri as an expert in this case, however he asserts that he disclosed Khuri as an "opinion witness."  PRSOF (doc. 100) at 3.  In his testimony, Khuri concedes that he cannot offer causation testimony in this

1  matter. Exbt. D (doc. 108) at 22-23.

> Q. Doctor, do you have an opinion whether exposure to lime dust could or might aggravate Mr. Schrum's asthma?
> ...
> THE WITNESS: I could not answer that question.
> ...
> Q. All right. Do you have an opinion whether exposure to coal dust could or might aggravate Mr. Schrum's asthma?
> ...
> THE WITNESS: Again, without doing extensive research, I couldn't tell you.

Id. Additionally, Khuri testified that he had not recently examined Schrum, had never visited the Plant, and never reviewed records from the Plant in connection with Schrum. Id. at 24, 27.

BNSF asserts that the MSDS lists certain "potential" effects of inhaling lime dust. Reply (doc. 107) at 8. Such a list, however, does not establish that Schrum's asthma was caused by his alleged exposure at the Plant.

Finally, Dr. Lindsay is Schrum's family doctor. Exbt. B (doc. 108) at 6. Schrum never retained Lindsey as an expert in this case, however he asserts that he disclosed Lindsay as an "opinion witness." PRSOF (doc. 100) at 3. Lindsay testified that Schrum's subjective complaints suggested that his work exacerbated his asthmatic condition, however, Lindsay admitted that he was not an expert in the area and could not say what in fact caused Schrum's alleged injuries. Exbt. B (doc. 108) at 25.

> Do you have an opinion with a reasonable degree of medical certainty whether this history of exposure to lime and coal dust aggravated Mr. Schrum's asthma?
> ....
> THE WITNESS: I'm not an expert in this area. There was obviously something that he was in contact with that during the period of time aggravated his asthmatic bronchitis condition.

- 10 -

>       I'm not an occupational medicine specialist
> in this day and age, and I have not inspected the
> plant nor his working environment. However, during
> the time that he worked, it seemed to exacerbate
> his asthmatic condition.

Id. at 25:1-25:15.

The Court finds Schrum's reliance on Ulfik to be misplaced. This Court is not required to follow the Second Circuit's conclusions in Ulfik. In any event, the court in Claar specifically distinguished the facts in that case from two other cases where the court concluded expert medical testimony was unnecessary to establish causation. 29 F.3d at 504.

> FELA plaintiffs still must demonstrate some causal
> connection between a defendant's negligence and
> their injuries. *Gallick v. Baltimore & O.R. Co.*,
> 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963),
> and *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740,
> 90 L.Ed. 916 (1946), do not compel a different
> conclusion. These cases arguably stand for the
> proposition that, in order to create an issue for
> the jury, a FELA plaintiff need show only the mere
> possibility that a defendant's actions caused his
> injuries. Plaintiffs here contend that they
> satisfied this minimal standard by establishing
> that they were exposed to some chemicals that can
> cause some of the injuries they complain of, and
> that the district court erred in demanding that
> their experts further demonstrate a causal
> connection before letting the case go to the jury.
>
> *Gallick* and *Lavender,* however, involved situations
> in which no special expertise was necessary to
> draw a causal inference. Once evidence was
> presented that the plaintiff's injuries just
> possibly may have been caused by the railroad's
> negligence, the jury in those cases was qualified
> to determine whether the railroad's negligence in
> fact played a part in causing the injuries. Here,
> in contrast, expert testimony is necessary to
> establish even that small quantum of causation
> required by FELA.

Id. at 503-04 (internal citations omitted). In Gallick, the plaintiff was injured from an insect bite that occurred at a known stagnant pool at the defendant's work site. 372 U.S. at 109. In

- 11 -

Lavender, it was determined that the plaintiff was injured by a blow to the head by a mail hook hanging on the outside of a train. 327 U.S. at 653. The Court finds the injuries and facts in the case at bar to more closely resemble those in Claar than those in Gallick or Lavendar.

Here, as the court found in Claar, a lay juror would not have the "specialized expertise" that is necessary to determine whether Schrum's exposure to lime and coal dust caused or aggravated his asthma. Moreover, because it is undisputed that Schrum had asthma before he worked at the Plant, a juror would have to determine how Schrum's condition was altered after working at the Plant. Expert testimony is necessary in this case to establish even the small quantum of causation required by FELA. See Claar, 29 F.3d at 504. Thus, the Court concludes that the evidence listed by Schrum does not satisfy the causation element required to establish his claim. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court concludes that BNSF is entitled to judgment as a matter of law on all of Schrum's claims. Id. In light of this conclusion, the remaining motions involving BNSF's third-party indemnity claim against Chemical Lime are now moot.

Therefore,

IT IS ORDERED that BNSF's Motion for Summary Judgment on Plaintiff's Claims (doc. 65), joined by Third-Party Defendant Chemical Lime, is GRANTED. The court clerk is directed to enter JUDGMENT for Defendant and terminate this case.

1    IT IS FURTHER ORDERED that Third-Party Defendant Chemical Lime's Motion for Summary Judgment Re: (1) No Proof of Negligence; (2) No Proof of Proximate Causation; and (3) No Facts Triggering Any Indemnity Obligation (doc. 68) is GRANTED in part and DENIED as moot in part.  It is granted as to Schrum's claims, which form the basis of the BNSF claim against Chemical Lime, but is denied as moot as to the balance of BNSF's indemnity claim.

   IT IS FURTHER ORDERED that BNSF's Motion for Summary Judgment on BNSF's Indemnification Claim (doc. 70) is DENIED as moot.

   IT IS FURTHER ORDERED that BNSF's Motion to Strike Untimely Disclosed Expert Opinion (doc. 67) is DENIED as moot.

   IT IS FINALLY ORDERED that Third-Party Defendant Chemical Lime's Motion to Strike (doc. 104) is DENIED as moot.

   DATED this 17th day of May, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record