WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Steven Schrum, | ) | |
| | ) | |
| Plaintiff, | ) | No. CIV 04-619-PHX-RCB |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| The Burlington Northern Santa | ) | |
| Fe Railway Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| The Burlington Northern Santa | ) | |
| Fe Railway Company, | ) | |
| a corporation, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Chemical Lime Company of | ) | |
| Arizona, a corporation; ABC | ) | |
| Corporations I-IV, fictitious | ) | |
| corporations, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| _____ | ) | |

## *Introduction*

Currently pending before the court is a motion for

reconsideration by defendant/third-party plaintiff, The Burlington
Northern Santa Fa Railway Company ("BNSF"), brought pursuant to
L.R. 7.1(g) (doc. 113).  In accordance with this court's order of
September 18, 2006, third-party defendant Chemical Lime Company of
Arizona ("Chemical Lime") filed a response (doc. 126) to this
motion and BNSF filed a reply (doc. 128).[1]  Having found oral
argument unnecessary, the court rules as follows.

### *Background*

On May 18, 2006, this court granted summary judgment in favor
of BNSF, and against plaintiff Steven Schrum.  Doc. 110.  Chemical
Lime joined in BNSF's motion (doc. 72), and the court granted
summary judgment in favor of Chemical Lime as well.  Id.

In addition to moving for summary judgment as to plaintiff's
claims, in its capacity as a third-party plaintiff BNSF filed a
separate motion seeking summary judgment "on its indemnification
claim against Chemical Lime[,]" as alleged in its third-party
complaint.  See Doc. 70 at 5.  Chemical Lime also sought summary
judgment on the indemnity issue, but contrary to BNSF, Chemical
Lime argued that there were "no facts triggering any indemnity
obligation" on its part.  Doc. 68 at 1.  This court denied as
"moot" BNSF's and Chemical Lime's motions with respect to the issue
of indemnification.  Doc. 110 at 13.  As directed by the court, on
May 18, 2006, judgment was entered in this case in favor of
defendant BNSF and against plaintiff Schrum.  Doc. 111.

BNSF timely filed this motion for reconsideration, wherein it

---

[1]     As explained in this court's September 18, 2006, order, the court
retains jurisdiction despite the fact that plaintiff and BNSF have both timely
filed Notices of Appeal.  See Doc. 125 at 2-3.

1  concedes that once the court found in BNSF's favor on the issue of

2  liability, whether Chemical Lime "had a duty to indemnify BNSF for

3  any judgment that might have been entered against it . .  became a

4  non-issue[.]" Doc. 113 at 2.  At the same time, however, BNSF is

5  taking the position that because the duty to defend is separate and

6  distinct from the duty to indemnify, the court should have

7  addressed the duty to defend, which it did not.  BNSF is requesting

8  the court "reconsider" this "narrow issue."  Id. at 3.  More

9  specifically, BNSF is requesting the court to "hold that Chemical

10  Lime breached its duty to defend . . . when it denied BNSF's

11  repeated tender of defense, and grant BNSF's summary judgment

12  motion against Chemical Lime on th[at] duty."  Id. (footnote

13  omitted).

14  ***Discussion***

15  ***I.  Standard of Review***

16      There is no express provision in the Federal Rules of Civil

17  Procedure for a motion for reconsideration.  See United States v.

18  Comprehensive Drug Testing, Inc., 473 F.3d 915, 955 (9th Cir. 2006)

19  (Thomas, J., dissenting).  "Rather, such motions are creatures of

20  local rule or practice."  Id. In the present case, BNSF brought its

21  motion for reconsideration pursuant to L.R. 7.2(g), see doc. 113 at

22  1. which, "[a]bsent good cause shown," requires the filing of such

23  motions "no later than ten (10) days after the filing of the order

24  that is the subject of the motion."  L.R. 7.2(g).  A timely motion

25  such as this "is construed as a motion to alter or amend a judgment

26  under Rule 59(e)."  See Shapiro v. Paradise Valley Unified, 374

27  F.3d 857, 863 (9th Cir. 2004) (citations omitted).

28      "There are four grounds upon which a Rule 59(e) motion may be

- 3 -

1  granted: 1) the motion is necessary to correct manifest errors of
2  law or fact upon which the judgment is based; 2) the moving party
3  presents newly discovered or previously unavailable evidence; 3)
4  the motion is necessary to prevent manifest injustice; or 4) there
5  is an intervening change in controlling law." Turner v. Burlington
6  Northern Santa Fe R.Co., 338 F.3d 1058, 1063 (9th Cir. 2003)
7  (internal quotation marks, citation and emphasis omitted).
8  "Whether or not to grant reconsideration is committed to the sound
9  discretion of the court." Navajo Nation v. Confederated Tribes of
10 the Yakama, 331 F.3d 1041, 1046 (9th Cir. 2003) (citation omitted).
11     BNSF "urge[s]" reconsideration to "prevent an injustice" to
12 it.  Doc. 113 at 3.  BNSF does not explicitly define this claimed
13 "injustice."  Evidently this "injustice" results from the fact that
14 the court did not address the duty to defend in its decision
15 granting summary judgment in favor of BNSF on the issue of
16 liability.  As the court noted in its September 18, 2006, Order,
17 "'[t]he duty to defend . . . is *not* the same as the duty to
18 indemnify[.]" Doc. 125 at 3 (quoting INA Ins. Co. v. North American
19 v. Valley Forge Ins. Co., 722 P.2d 975, 982 (Ariz. Ct. App. 1986)
20 (emphasis added)).  Furthermore, the duty to defend "generally
21 exists *regardless* of whether the insured is ultimately found
22 liable."  Id. (quoting INA Ins., 722 P.2d at 982 (emphasis added)).
23 Thus it follows that "[t]he accrual of the obligation to provide a
24 defense does not control the accrual of the obligation to
25 indemnify."  INA Ins., 722 P.2d at 982.  Based upon these well
26 settled principles, the court finds that to prevent manifest
27 injustice, it is necessary to address the issue of whether Chemical
28 Lime had a contractual duty to defend BNSF in this action brought

1   pursuant to the Federal Employers' Liability Act ("FELA"), 45

2   U.S.C. § 51 *et seq*.  This issue must be addressed because, as the

3   foregoing shows, although granting summary judgment in BNSF's favor

4   on the underlying merits rendered the indemnity issue moot, the

5   same is not true of the duty to defend. What is more, Chemical Lime

6   agrees that the court's prior order granting summary judgment in

7   BSNF's favor did "not, in and of itself, dispose of BNSF's separate

8   'duty to defend' claim."  Doc. 126 at 2.   Thus, reconsideration is

9   appropriate here.

10  ***II.  Duty to Defend***

11      On October 15, 1991, The Atchison, Topeka and Santa Fe Railway

12  Company entered into a "Contract for Industry Track" ("the 1991

13  ITA" or "the ITA") with Chemstar Lime Company.  Doc. 128-2, exh. 1

14  thereto.  Plainly neither BNSF nor Chemical Lime are named parties

15  to that ITA.  Yet, the crux of the present motion is whether

16  Chemical Line has a duty to defend BNSF under that particular

17  Agreement.[2]  Thus, the court assumes, as do the parties on this

18  motion, that the rights and obligations of the 1991 ITA have been

19  properly assigned and/or consented to thereunder.[3]

20  _____

21      [2]      At one point, BNSF was relying upon an ITA executed on June 12, 2002.
    See DSOF (doc. 127), exhs. C and D thereto.  On this motion, however, BNSF is
22  relying strictly upon the 1991 ITA, which stands to reason because plaintiff "was
    first diagnosed or treated for his claims on" February 2, 2002 claims, when the
23  1991 ITA still was in effect.  See Doc. 69 at ¶ 15; and Doc. 101 at ¶ 15.

        [3]      In  response  to  BNSF's  motion  for  summary  judgment  on  the
24  indemnification issue, in a footnote Chemical Lime correctly pointed out that
    neither it nor BNSF are named parties to the 1991 ITA.  See Doc. 79 at 2, ¶ 1.
25  Chemical Lime further noted that "[t]here is no evidence there is an assignment by
    Chemstar Lime Company to Chemical Lime Company, nor is there evidence of written
26  consent by Santa Fe to an assignment," which that contract requires, "if any [such
    assignment]  exists."  Id.  Despite those observations, Chemical Lime did *not* argue
27  that the 1991 ITA does not govern here because neither it nor BNSF are named
    parties to that Agreement.  Instead, Chemical Lime devoted the bulk of its response
28  to arguing that the 1991 ITA's indemnity provision was not triggered because BNSF
    could not prove that Chemical Lime was negligent and that its negligence caused

1    Pursuant to the 1991 ITA, BNSF operated a railroad track which

2    served Chemical Lime's Nelson, Arizona plant.  <u>See</u> Doc. 71, exh. 1

3    thereto at 1.  BNSF claims that "[i]n return, Chemical Lime was

4    required to defend and indemnify BNSF for any and all FELA claims

5    arising out of conditions at the Plant or service under the [1991

6    ITA]."  Doc. 113 at 3 (citations omitted).  After being advised

7    that plaintiff alleged that he had been injured while working at

8    Chemical Lime's Nelson plant, on September 24, 2003, BNSF notified

9    Chemical Lime of that claim.  <u>See</u> Doc. 128-2, exh. 4 thereto at 34-

10   35.  Apparently because no response was forthcoming from Chemical

11   Lime, on November 9, 2004, BNSF filed an amended answer and third-

12   party complaint, seeking "indemnification for all losses, damage or

13   expense suffered by [it] as a result of [Chemical Lime's] operation

14   of the Nelson lime plant."  Doc. 24, at 4 ¶ A.  BNSF also sought to

15   recover its "attorneys' fees incurred in defending the underlying

16   action[.]"  <u>Id.</u> at 4, ¶ B.

17   Chemical Lime agrees that on three separate occasions "BNSF

18   tendered defense of this matter" to it.  <u>See</u> DSOF (doc. 127) at 7,

19   ¶ 7 (citations omitted).  This was done in a series of letters from

20   BNSF's counsel to Chemical Lime's counsel.  In a March 15, 2005,

21   

22   BNSF's liability to plaintiff under FELA.  <u>See</u> Doc.  2-5.

23   What is more, in its motion for summary judgment Chemical Lime never asserted that the 1991 ITA did not apply because neither it nor BNSF are named parties thereto.  Again, Chemical Lime focused on whether under the particular facts of this case the indemnity provision therein was triggered.  <u>See</u> Doc. 68 at 5-7.

24   Likewise, nowhere in its response to BNSF's motion for reconsideration does it raise the issue of whether the 1991 ITA applies to these particular parties.  In

25   fact, as Chemical Lines frames it, "[t]he question presented is whether the *parties* expressed an intention in [the ITA] that *Chemical Lime owed BNSF a duty to defend*

26   claims even where the only alleged negligence was attributable to BNSF, Chemical Lime was not alleged to be negligent, and Chemical Lime's actions never caused any injury to the claimant." Resp. (doc. 126) at 4 (emphasis added).  Thus, to the

27   extent that at one point in this litigation Chemical Lime was suggesting that the 1991 ITA does not apply because neither it nor BNSF are named as parties thereto,

28   evidently it has abandoned that position.

letter, BNSF advised Chemical Lime that more than a year before, on
September 24, 2003, "BNSF [had] provided notice of Plaintiff's
claim to Chemical Line[.]" Id., exh. E thereto.  Among other
things, at that time BNSF "placed Chemical Lime on notice that it
may be liable to indemnify BNSF for Plaintiff's claim." Id.  In
that March 15, 2005, letter, BNSF expressly "renew[ed] its tender
of defense to Chemical Lime and request[ed] that Chemical Lime
indemnify [BNSF] for plaintiff's claims[]" herein.  Id.  BNSF
continued, "Chemical Lime's failure to accept this tender may
result in further obligation to pay," inter alia, "all costs of
litigation[.]" Id.

     BNSF followed up with a letter dated April 14, 2005, which
included a copy of the 2002 ITA.  See id., exhs. C and D thereto.
BNSF advised Chemical Line that in its view under the terms of that
Agreement, Chemical Lime had a duty to defend and indemnify BNSF in
connection with this FELA action.  Again, BNSF requested written
notice of acceptance of that "tender" from Chemical Lime by "no
later than April 19, 2005." Id., exh. C thereto.

     Shortly thereafter, on April 28, 2005, responding to a request
from Chemical Lime, BNSF sent Chemical Lime a copy of the 1991 ITA.
See id., exh. B thereto.  In that letter, BNSF stated its view that
under Article 1, paragraphs 4, 7 and 8, Chemical Lime had a duty to
defend and indemnify BNSF in connection with this FELA action.
Id.  To date, Chemical Lime has not accepted these purported
tenders of defense by BNSF.  In fact, in a letter dated July 19,
2005, BNSF "confirm[ed] that Chemical Lime . . . denied BNSF's
tender of defense at th[at] time." Doc. 128-2, exh 4 thereto at
20.  BNSF stated its "understand[ing] that Chemical Lime may

1  revisit th[at] issue following plaintiff's deposition[.]" *Id.*
2  Regardless, BNSF closed that letter by "not[ing] that [it] w[ould]
3  continue to look to Chemical Lime to recover its continuing fees
4  and costs incurred in the defense of this case."  *Id.*

5      ***A.  1991 ITA***

6          ***1.  Governing Law***

7      At the outset it should be noted that the 1991 ITA expressly
8  provides that "[a]ll questions arising" thereunder "shall be
9  decided according to the laws of the State in which The Track is
10 located."  <u>See</u> Doc. 128-2, exh. 1 thereto at 7, art. III, ¶ 7.
11 Because the subject track is located in Nelson, Arizona, Arizona
12 law governs this dispute.

13         ***2.  Contract Language***

14     Chemical Lime's duty to defend arises from two particular
15 provisions of the 1991 ITA, according to BNSF.  First, BNSF is
16 relying upon paragraph 4(b) which essentially requires Chemical
17 Lime to "indemnify and hold harmless [BNSF] from any . . . *claimed*
18 *liability* arising under" FELA, "[r]egardless of *any . . . alleged*
19 *negligence* of [BNSF][.]" <u>*Id.*</u>, exh. 1 thereto at 2, ¶ 4(b) (emphasis
20 added).  BNSF also is relying upon paragraph eight of Article I[4]
21 which broadly stated requires Chemical Lime "to *assume the defense*
22 *of any* lawsuit, . . . brought against [BNSF] by any . . .
23 individual, . . . , relating to any matter covered by this
24 Agreement for  which [Chemical Lime] has an obligation to assume
25 liability for and/or save and hold harmless [BNSF]." <u>*Id.*</u>, exh. 1
26 thereto at 5, ¶ 8 (emphasis added).  Especially in light of the

27 _____

28     [4]   Hereinafter all references to paragraph 8 shall be read as referring
to paragraph 8 of Article I.

phrases "alleged negligence" and "claimed liability" in paragraph
4(b), BNSF asserts that "Chemical Lime clearly owed [it] a duty to
defend . . . from the inception of this lawsuit."  Mot. (doc. 113)
at 4.  Emphasizing that the duty to defend is separate and apart
from the duty to indemnify, BNSF further asserts that Chemical Lime
was required to defend it throughout this litigation, even though
ultimately the court granted summary judgment in favor of BNSF and
Chemical Lime on the issue of liability.

Chemical Lime offers five different arguments as to why it
does not have a duty to defend BNSF under the 1991 ITA.  The court
will address each in turn; but, as will be seen, in the end none of
these arguments are availing.

### a.  *Lack of Specificity*

First, Chemical Lime responds that the only contractual
indemnification provision directly pertaining to FELA claims,
paragraph 4(b) does not specifically mention a duty to defend.
Likewise, Chemical Lime points out that that paragraph does not
"otherwise refer to payment of attorneys' fees and costs[.]" Resp.
(doc. 126) at 5.  In the absence of such explicit language,
Chemical Lime maintains that it had no duty to defend this FELA
action.

Chemical Lime makes a related textual argument.  It points out
that other provisions of the ITA expressly require it to "assume
the defense of all . . . claims" set forth in those paragraphs,
*i.e.* ¶¶ 6(a) and 6(b).  See Doc. 128-2, exh. 1 thereto at 4, ¶¶
6(a) and 6(b).  Similarly, other provisions of the ITA expressly
provide that Chemical Lime will reimburse BNSF "for all costs[]
including . . . legal costs[.]" See id. at 4, ¶6.  Without

1  elaborating, Chemical Lime asserts that the omission of similar

2  language from paragraph 4(b) "has legal significance."  Resp. (doc.

3  126) at 6.   In essence, then, it is Chemical Lime's position that

4  paragraph 4(b) is limited to the duty to indemnify.

5       BNSF counters that Chemical Lime is ignoring the "plain terms"

6  of the 1991 ITA, particularly paragraph 8.  Reply (doc. 128) at 2.

7  In arguing the Chemical Line has a duty to defend it under the ITA,

8  BNSF engages in a two-step analysis.  First, BNSF  contends that

9  Chemical Lime had a duty to indemnify it under paragraph 4(b)

10  because plaintiff commenced this action against BNSF, and this

11  action involves "claimed liability arising under" FELA for

12  "condition[s] belonging to or under the control of [Chemical

13  Lime][,]" *i.e.* plaintiff's inhalation of lime dust while servicing

14  Chemical Lime's Nelson plant.  See Doc. 128-2, exh. 1 thereto at 2,

15  ¶ 4(b).  And, according to BNSF, based upon the plain language of

16  paragraph 4(b), that duty to indemnify existed "[r]egardless of any

17  negligence of alleged negligence by [BNSF][.]" Id.

18       Second, as BNSF reads the ITA, that duty to indemnify in turn

19  gave rise to a duty to defend.  More specifically, because

20  paragraph eight provides in relevant part that Chemical Lime

21  "agrees to assume the defense of *any* lawsuit, . . . relating to *any*

22  *matter* covered by this Agreement for which [Chemical Lime] has an

23  obligation to assume liability for and/or save and hold harmless

24  [BNSF][,]" and because BNSF believes Chemical Lime had such an

25  obligation under paragraph 4(b), that triggers Chemical Lime's duty

26  to defend under paragraph 8.  Id. at 5, ¶ 8.  Stated somewhat

27  differently, when there is a duty to indemnify for "claimed [FELA]

28  liability" under paragraph 4(b), BNSF asserts that a concomitant

1   duty to defend attaches pursuant to paragraph 8.  That duty

2   includes payment by Chemical Lime of "all the costs incident to

3   such defense including, but not limited to, attorneys' fees, [and]

4   . . . litigation expenses[.]" See id.

5        BNSF has the stronger argument here.  "[I]n construing a

6   provision of a document, that provision *must* be read in connection

7   with all other provisions of the instrument." Hiett v. Howard, 494

8   P.2d 1347, 1352 (Ct. App. 1972) (citations omitted) (emphasis

9   added).  Chemical Lime's construction of the ITA would require the

10  court to ignore this basic tenet of contract construction by

11  reading paragraph 4(b) in isolation.  To be sure, when that

12  paragraph is read alone, it does not mention a duty to defend; nor

13  does it mention the payment of attorneys' fees or litigation

14  expenses.  Paragraph 4(b) must be read in conjunction with

15  paragraph 8, however.  When that is done, as previously explained,

16  clearly Chemical Lime had a duty to defend BNSF in this action.

17       The fact, which Chemical Lime points out, that there are other

18  provisions in the ITA which, unlike paragraph 4(b), expressly

19  require it to assume BNSF's defense or pay for its "legal costs,"

20  does not change the court's view that Chemical Lime has a duty to

21  defend here when paragraphs 4(b) and 8 are read together.  Chemical

22  Lime's position is not well-taken in this regard because like

23  paragraph 4(b) there are other paragraphs, such as 2(b), 4(a) and

24  5(e), which do not specifically mention a duty to defend.  As with

25  4(b), however, those paragraphs must be read in conjunction with

26  the broad duty to defend found in paragraph 8.  Such a reading is

27  consistent with the preference for construing contracts so as to

28  "give[]effect to all portions" thereof, as opposed to "an

1  interpretation which leaves one or some parts without effect."  <u>See</u>

2  <u>Tenet Healthsystem TGH, Inc. v. Silver</u>, 52 P.2d 786, 790 (Ariz. Ct.

3  App. 2003) (internal quotation marks and citation omitted); <u>see</u>

4  <u>also</u> <u>Johnson v. Pointe Community Ass'n, Inc.</u>,73 P.3d 616, 622

5  (Ariz. Ct. App. 2003) (internal quotation marks and citation

6  omitted) (Courts "will, if possible, interpret a contract in such a

7  way as to reconcile and give meaning to all of its terms, if

8  reconciliation can be accomplished by any reasonable

9  interpretation.") Reading paragraph 4(b) as well as other similar

10  paragraphs alone would violate this preference by rendering

11  paragraph 8 superfluous.  For all of theses reasons, the court does

12  not find persuasive Chemical Lime's argument that because there is

13  no explicit mention in paragraph 4(b) of a duty to defend, it did

14  not have a duty to defend BNSF in this FELA action.

15                    ***b.  Paragraph 8***

16       Despite the foregoing, Chemical Lime challenges BNSF's

17  reliance upon paragraph 8 as a basis for finding a duty to defend.

18  According to Chemical Lime, that paragraph does not apply here

19  because the more specific terms of paragraph 4(b), which govern

20  FELA claims, control over the more general terms of paragraph 8.

21  Chemical Lime is correct that in contract interpretation "specific

22  terms control the general."  <u>Gfeller v. Scottsdale Vista North</u>

23  <u>Townhomes Ass'n.</u>, 969 P.2d 658, 660 (Ariz. Ct. App. 1998) (citation

24  omitted).  What Chemical Lime fails to take into account, however,

25  is that that rule only comes into play when there is an

26  inconsistency.  <u>See</u> <u>id.</u>; and <u>Pecarovich v. Allstate Ins. Co.</u>, 309

27  F.3d 652, 658 n.10 (9th Cir. 2002) (internal quotation marks and

28  citation omitted) ("It is well settled that [w]here there is an

1    inconsistency between general provisions and specific provisions,

2    the specific provisions ordinarily qualify the meaning of the

3    general provisions.") As previously alluded to, there is no

4    consistency between paragraphs 4(b) and 8.  They can easily be read

5    together to give effect to both provisions.  Thus, there is no need

6    to resort to this rule of construction.  See Gfeller, 969 P.2d at

7    660 (rejecting argument that the more specific provision of CC & Rs

8    governed over a general provision where there was "no

9    inconsistency" between the two).

10        Next, Chemical Lime asserts that paragraph 8 is not

11   "triggered" because the duty to defend thereunder is limited to

12   claims "'for which [it] has an obligation to assume liability[]'"

13   pursuant to paragraph 4(b).  Resp. (doc. 126) at 7 (quoting doc.

14   128-2, exh. 1 thereto at 5, ¶8).  Chemical Lime continues; it had

15   no liability under paragraph 4(b) because that paragraph "applies

16   only where Chemical Lime 'caused' the liability in some fashion."

17   Id.  Indeed, Chemical Lime goes so far as to assert that paragraph

18   4(b) "requires proof that there was a cause and effect between the

19   claim and the damages."  Id. (emphasis in original).  Further,

20   Chemical Lime reasons that given, inter alia, the court's grant of

21   summary judgment in its favor because plaintiff could not "satisfy

22   the causation element" of a FELA claim, Chemical Lime cannot be

23   held liable under paragraph 4(b).  See Doc. 110 at 12.  Hence, in

24   turn, there was no event triggering paragraph 8's duty to defend.

25        The weakness in this argument is that, once again, it would

26   render certain language in the ITA "mere surplusage[.]" See

27   Gfeller, 969 P.2d at 660.  In particular, if paragraph 4(b)

28   requires proof of causation to invoke the duty to defend, use of

1  the qualifiers "alleged" and "claimed" in that paragraph would be

2  meaningless.  Further, because the duty to defend is broader than

3  the duty to indemnify in that the former "generally exists

4  regardless of whether the insured is ultimately found liable," it

5  stands to reason that proof of causation is not necessarily

6  required to establish a duty to defend.  See Hauskins v.

7  McGillicuddy, 852 P.2d 1226, 1234 (Ariz. Ct. App. 1992) (citation

8  omitted).

9       Moreover, construing the ITA to require causation as a

10  predicate to the duty to defend also would render meaningless

11  paragraph 8's broad language:

12          Upon written notice from [BNSF], [*Chemical Lime*]
            *agrees to assume the defense of any lawsuit, . . .*
13          *brought against [BNSF]* by any . . . , individual,
            . . . , relating to any matter covered by this
14          Agreement for which [Chemical Lime] has an obligation
            to assume liability for and/or save and hold harmless
15          [BNSF]. [Chemical Lime] shall pay all the costs
            incident to such defense including, but not limited
16          to, attorneys' fees, investigators' fees, litigation
            expenses, settlement payments, and amounts paid in
17          satisfaction of judgments.  *Any and all lawsuits . . .*
            *brought or threatened on any theory of relief available*
18          *at law*, in equity or under the rules of any
            administrative agency *shall be covered by this Section*
19          *including*, but not limited to, the theories of
            intentional misconduct, negligence, breach of statute or
20          ordinance, or upon *any theory created by any statute* or
            ordinance, state or *federal*.

21

22  Doc. 128-2, exh. 1 thereto at 5, ¶ 8 (emphasis added).  This FELA

23  "lawsuit" was "brought" against BNSF by an "individual" under a

24  "theory created by [federal] statute[.]" See id.  Thus, assuming

25  for the moment that BNSF provided "written notice" of this lawsuit,

26  Chemical Lime's duty to defend under paragraph 8 was triggered even

27  without a finding of causation.

28       Additionally, Chemical Lime contends that paragraph 4(b) is

- 14 -

not triggered here "because Plaintiff never alleged that Chemical
Lime was negligent."  Resp. (doc. 126) at 7.  The plain language of
the 1991 ITA demonstrates the flaw in this argument.  There is
nothing in that Agreement requiring plaintiff to allege that
Chemical Lime was negligent as a precursor to its duty to indemnify
and/or defend.[5]

Chemical Lime further maintains that because its obligations
arise, if at all, under a contract, as opposed to an insurance
policy, it has no duty to defend unless it has a duty to indemnify.
 As a matter of policy, Chemical Lime maintains that a finding that
it has a duty to defend here would improperly place its
"obligations on par with that of an insurance company."  Resp.
(doc. 26) at 8.  Chemical Lime selectively quotes from Regan
Roofing Co. v. Superior Court, 29 Cal.Rptr.2d 413 (Ct. App. 1994)
to support this argument.  This argument is misplaced for several
reasons.  First, the Regan Roofing court was applying California
law, not Arizona law.  Not only that, the court in Regan Roofing
was, in part, interpreting a California statute governing
interpretation of indemnity agreements.  No similar statute is at
issue in the present case.

Second, a careful reading of Regan Roofing shows that the
court there actually held that under California's unique statutory

---

[5]      What is more, although in his complaint, which named only BNSF as a
defendant, plaintiff did not allege that Chemical Lime was negligent, during his
deposition he testified that he "believe[d] that the lime dust exposure and the
coal and coke dust exposure from [C]hemical [L]ime is what . . . hurt [him] more
than anything else."  doc. 128-2, exh. 2 thereto at 64, l. 11-13.  And when asked
if all of "those claims ar[os]e out of the exposures that occurred at the Chemical
Lime plant[,]" plaintiff responded, "Yes."  Id., exh. 2 thereto at 64: 4-17.  In
a similar vein, when asked whether he "believe[d] Chemical Lime [bore] any
responsibility for [his] alleged injuries[,]" plaintiff replied, "Yes. I believe
so."  Id., exh. 2 thereto at 163: 1-3.  Thus, plaintiff's theory of liability
encompasses negligence by Chemical Lime.

1   scheme for summary adjudication, it was "premature" for the lower
2   court to decide whether the general contractor had a contractual
3   duty to indemnify subcontractors where no determination had been
4   made as to whether the latter were negligent.  <u>Id.</u> at 419.  The
5   court there did not, despite Chemical Lime's assertion to the
6   contrary, hold that a duty to defend is predicated upon a duty to
7   indemnify.

8        Third, more recently the same court that decided <u>Regan Roofing</u>
9   held, in essence, "that it is quite proper for an indemnity clause
10  to put the indemnitor in the position of an insurer: liable without
11  fault."  Cal. Constr. L. Manual § 5:156 (6th ed.) (citing <u>Centex</u>
12  <u>Golden Const. Co. v. Dale Tile Co.</u>, 93 Cal.Rptr.2d 259 (Ct. App.
13  2000)).  Therefore, the fact that Chemical Lime's obligations under
14  the ITA potentially are comparable to those of an insurer is not a
15  valid reason for disregarding the plain language of that Agreement.

16                    ***c.  Sole Negligence***

17       "Under Arizona law, the general rule is that an indemnitee is
18  not entitled to indemnification resulting from its active
19  negligence."  <u>Market Finders Insurance Corp. v. Scottsdale</u>
20  <u>Insurance Co.</u>, 2005 WL 2897527, at *2 (W.D. Ky. Nov. 1, 2005)
21  (citation omitted).  Thus, as Chemical Lime accurately states, "the
22  intention to compensate the indemnitee for [its] own negligence
23  must be expressed in clear and unequivocal terms."  <u>Weatherguard</u>
24  <u>Roofing Co., Inc. v. D.R. Ward Construction Co., Inc.</u>, 152 P.3d
25  1227, 1231 (Ariz. Ct. App. 2007) (internal quotation marks and
26  citation omitted).  Chemical Lime is taking the position that
27  paragraph 8 does not express the requisite "clear and unequivocal"
28  intent that BNSF can be indemnified for its "sole negligence."

1    Reply (doc. 126) at 9.  In the absence of such intent, Chemical

2    Lime further asserts that it has no duty to defend BNSF.

3        This argument, too, is misplaced.  "In determining whether the

4    general rule applies, the court must examine the all encompassing

5    language of the agreement[,]" not just one paragraph, as Chemical

6    Lime urges.  See Market Finders, 2005 WL 2897527, at *2 (internal

7    quotation marks and citation omitted).  "If the language clearly

8    and unequivocally indicates that one party is to be indemnified

9    regardless of whether or not that injury was caused in part by that

10   party, indemnification is required notwithstanding the indemnitee's

11   active negligence." Market Finders, 2005 WL 2897527, at *2

12   (internal quotation marks and citation omitted).  Examination of

13   the entire agreement is necessary, and "mechanical application of

14   [the general rule] should be avoided in determining the parties'

15   intent because [r]elying exclusively on the active/passive

16   distinction . . . may prevent an agreement from being enforced as

17   the parties intended." Cunningham v. Goettl Air Conditioning,

18   Inc., 980 P.2d 489, 493 (Ariz. Sup. Ct.  1999) (en banc) (internal

19   quotation marks and citation omitted).  Thus, "there is no

20   requirement that the term negligence actually be used, or that

21   specific reference be made to liability arising out of the

22   indemnitee's negligence." Weatherguard, 152 P.3d at 1231 (internal

23   quotation marks and citation omitted).  Rather, the Arizona Supreme

24   Court "require[s] clarity, not [that] any particular word or

25   phrase[]" be used "to protect an  indemnitee against his own

26   negligence." Id. (citation omitted).

27       Applying the foregoing standards to the 1991 ITA shows that

28   the parties did "clear[ly] and unequivocal[ly]" express their

1  intent that Chemical Lime had an obligation to indenmnify BNSF,

2  notwithstanding BNSF's sole negligence.   Paragraph 4(b)

3  unambiguously states that "[r]egardless of any negligence or

4  alleged negligence of [BNSF], [Chemical Lime] shall indemnify and

5  hold harmless [BNSF] from any liability or claimed liability

6  arising under [FELA][.]" Doc. 128-2, at 2, ¶ 4(b).   Moreover,

7  paragraph 7 could not be more clear in providing that "[i]t is the

8  intention of the parties that [BNSF's] right to indemnity contained

9  in Section[] 4(b), . . . shall be valid and enforceable against

10 [Chemical Lime] *regardless of negligence (whether active, passive,*

11 *derivative, joint, concurring or comparative)* on the part of

12 [BNSF], its officers, agents and employes [sic]."  <u>Id.</u>, at 5, ¶ 7

13 (emphasis added).   The broad and unambiguous language of the 1991

14 ITA leaves no doubt: Chemical Lime had an obligation to defend BNSF

15 regardless of whether BNSF was solely negligent.

16     Chemical Lime tries to avoid this result by pointing out that

17 paragraphs 4(a) and 6(b) of the ITA specifically state that it does

18 not have a duty to indemnify thereunder where BNSF is solely

19 negligent.  <u>See</u> <u>id.</u>, at 2, ¶ 4(a) and at 4, ¶ 6(b).   Contrasting

20 those paragraphs with paragraph 8, which admittedly does not

21 contain similar language, Chemical Lime argues in the alternative

22 that the ITA is ambiguous and "presents a fact question as to what

23 the parties truly intended."  Resp. (doc. 126) at 9.   This

24 reasoning is specious.

25     The fact that paragraphs 4(a) and 6(b) clearly provide that

26 Chemical Lime does not have a duty to indemnify for "claim[s]

27 result[ing] from the sole negligence of [BNSF][,]" actually

28 supports the contrary view.   That is, that the parties knew how to

1   express their intent to exclude claims arising from BNSF's sole

2   negligence, and they did so in paragraphs 4(a) and 6(b), but not

3   elsewhere.   If the parties had intended a similar exclusion for

4   claims coming within the purview of paragraph 4(b), they could just

5   have easily used similar language, but they did not.   Instead, as

6   set forth above, the parties used contrary language, expressly

7   stating their "intent[]" that Chemical Lime indemnify BNSF

8   regardless of any type of negligence on the part of BNSF.   See Doc.

9   128-2, at 5, ¶ 7.   In light of the foregoing, the court finds no

10  merit to Chemical Lime's argument that it has no duty to defend

11  here because BNSF allegedly was solely negligent.

12                    ***d.  Conflict of Interest***

13       Chemical Lime further posits that it has no duty to defend

14  because there is "[a] clear divergence of interests" between it and

15  BNSF; and under Arizona law a "duty to defend cannot exist in the

16  face of such a conflict[]" between an indemnitee and an indemnitor.

17  See Resp. (doc. 126) at 10 (emphasis in original) (citation

18  omitted).   From Chemical Lime's perspective, this claimed

19  divergence arises because it was in its interest to argue that BNSF

20  was negligent, whereas it was in BNSF's interest to argue the

21  opposite – that Chemical Lime was negligent.

22       Chemical Lime fares no better with this conflict of interest

23  argument.   First of all, it ignores the fact that under FELA, BNSF,

24  as plaintiff's employer, had a non-delegable duty to provide him

25  with a safe place to work.   See Haugen v. The Burlington Northern

26  and Santa Fe Railway Co., 2001 WL 1852331, at *2 (W.D. Wash. Nov.

27  27, 2001) (citing, *inter alia*, Shenker v. Baltimore & O.R. Co., 374

28  U.S. 1, 7-11 (1963)).   Given that non-delegable duty, even if BNSF

1   had established negligence on the part of Chemical Lime, BNSF could

2   not have circumvented its liability to plaintiff under FELA.

3   Indeed, given that non-delegable duty, it is easy to see why BNSF

4   would seek to have Chemical Lime indemnify and defend it as part of

5   the 1991 ITA.

6        What is more, BNSF and Chemical Lime did not have an actual

7   conflict of interest.  In fact, as BNSF accurately describes it,

8   their interests were "unified[.]" Reply (doc. 128) at 8.  Both

9   Chemical Lime and BNSF had an interest "in proving that (a) BNSF

10  did not cause plaintiff's injuries; (b) there were no problems at

11  Chemical Lime's Plant; and (c) plaintiff's claims failed as a

12  matter of law."  Id.  Indeed, so closely aligned were the interests

13  of BNSF and Chemical Lime that the latter joined in BNSF's summary

14  judgment motion, where BNSF (and hence Chemical Lime) ultimately

15  prevailed.  See Doc. 128-2, exh. 4 thereto.  This joinder renders

16  disingenuous  Chemical Lime's assertion that it had a conflict of

17  interest with BNSF.

18       Finally, Chemical Lime's primary authority,

19  Bridgestone/Firestone North America Tire, L.L.C. v. A.P.S. Rent-A-

20  Car & Leasing, Inc., 88 P.3d 572 (Ariz. Ct. App. 2004), to the

21  extent it is relevant at all, actually supports BNSF's position.

22  In the first place Bridgestone is factually distinguishable in that

23  the court was construing an Arizona statute governing

24  indemnification rights of sellers and manufacturers in a product

25  liability action.  See A.R.S. § 12-684 (2003).  The tire

26  manufacturer in Bridgestone brought a declaratory judgment action

27  against a rental car company.  The manufacturer sought a ruling

28  that it did not have duty to indemnify the car company under that

1  statute for damages which had been awarded to the company's

2  customers in a product liability action.   The court recognized

3  that under the common law and the Restatement (Second) of Judgments

4  "a conflict of interest between an indmenitor and indemnitee *might*

5  justify a properly notified indmenitor's refusal to assume the

6  indemnitee's defense in the underlying action." Id. at 579.

7  Nonetheless, because section 12-684 did "not include a conflict of

8  interest exception or defense[,]" the court held "the conflict

9  d[id] not render [the] tender of defense 'improper' or otherwise

10 negate [the indemnitee's] right to [statutory] indemnity[.]" Id.

11 at 580 (emphasis added).

12     Like section 12-684, the ITA does not include a conflict

13 exception.   Therefore, under the Bridgestone court's reasoning the

14 purported existence of a conflict here does not obviate Chemical

15 Lime's duty to defend under the ITA.   In short, there is no merit

16 to Chemical Lime's argument that it has no duty to defend BNSF

17 because it supposedly has a conflict of interest with BNSF.

18                    *e.  Tender*

19     Chemical Lime's final attempt to avoid a duty to defend in

20 this action is grounded in its belief that "BNSF never made an

21 unequivocal offer to relinquish complete control of the defense."

22 Resp. (doc. 126) at 12 (citation omitted).   As Chemical Lime

23 interprets the correspondence from BNSF, "[t]he most [BNSF] states

24 was that it was looking to be 'indemnified' and that it was

25 'tendering' the case." Id.  From Chemical Lime's perspective, this

26 was not a "proper tender," and hence it had no duty to defend. See

27 id.

28     BNSF retorts that it provided what was required under

1   paragraph 8 of the ITA, which was "written notice[.]" <u>See</u> Doc. 128-
2   2, exh. 1 thereto at 5, ¶ 8.  That "written notice" took the form
3   of four letters from BNSF's counsel to Chemical Lime's counsel
4   detailed earlier in this Order.  <u>See</u> <u>id.</u>, exh. 4 thereto.  When
5   Chemical Lime refused to defend and indemnify BNSF, despite those
6   requests to do so, BNSF filed a third-party complaint against
7   Chemical Lime.  <u>See</u> Doc. 24 at 4-5.  Thereafter, counsel for both
8   BNSF and Chemical Lime participated in this litigation, with
9   "Chemical Lime's attorneys attend[ing] plaintiff's deposition and
10  the depositions of [his] liability expert and treating physician."
11  Reply (doc. 128) at 9.  Consequently, BNSF is taking the position
12  that "Chemical Lime has participated fully in this case and BNSF
13  did all it was required to do to have Chemical Lime accept BNSF's
14  tender of defense."  <u>Id.</u>  Lastly, BNSF notes that until now
15  "Chemical Lime never objected to the form of BNSF's tender of
16  defense."  <u>Id.</u>

17      As with Chemical Lime's other arguments attempting to avoid
18  its duty to defend under the 1991 ITA, this one fails too.  As set
19  forth above, the 1991 ITA required only "written notice."  That
20  Agreement did not specify what form the notice should take.  Thus,
21  to the extent Chemical Lime is asserting that the ITA requires
22  something more than "written notice," it is wrong.

23      Nor does the case law to which Chemical Lime cites support its
24  contention that something beyond the letter requests by BNSF,
25  tendering a defense, was required here.  The issue in the three
26  cases upon which Chemical Lime is relying was the timeliness of the
27  tenders of defense, not the sufficiency thereof.  <u>See</u> <u>Bloch v.</u>
28  <u>Arrowhead-Puritas Waters, Inc.</u>, 798 F.2d 1238, 1240 (9th Cir. 1986)

1  (internal quotation marks and citation omitted) (tender of defense
2  "insufficient as a matter of law" where it was given "almost 20
3  months after the filing of [plaintiff's] action and after
4  substantial discovery had been completed[,]" and thus "did not
5  constitute notice as soon after the institution of the suit as to
6  permit complete control of pretrial proceedings by" manufacturer of
7  allegedly defective product); Litton Systems, Inc. v. Shaw's Sales
8  and Service, Ltd., 579 P.2d 48, 52 (Ariz. Ct. App. 1978) (tender of
9  defense sufficient where "notice . . . given as soon after the
10 institution of suit as to permit complete control of pretrial
11 proceeding by . . . indmenitor[,]" as was evidenced by the fact
12 that indemnitor's local counsel attended depositions); and U.S.
13 Wire & Cable Corp. v. Ascher Corp., 167 A.2d 633, 637 (N.J. Sup.
14 Ct. 1961) (letter to indmenitor "mak[ing] sufficient demand and at
15 least impliedly . . . offer[ing] to surrender control of any
16 portion of" the underlying action did not give "timely notice"
17 where "it was given 17 days before actual trial and . . . when all
18 [preliminary] proceedings . . . had been accomplished").  Thus,
19 none of the three cases are instructive in terms of what,
20 substantively, constitutes a proper tender of defense.
21      Moreover, as the record shows, on three separate occasions
22 Chemical Lime did receive "written notice" from BNSF specifically
23 stating that BNSF was tendering its defense of this action to
24 Chemical Lime.  See Doc. 128-2, exh. 4 at 21, 32 and 33.  Thus,
25 BNSF complied with the 1991 ITA in terms of providing written
26 notice to Chemical Lime that BNSF wanted Chemical Lime to indemnify
27 and defend it herein.  For the reasons set forth herein,
28      It Is ORDERED that the motion for reconsideration by

- 23 -

defendant/third-party plaintiff, The Burlington Northern Santa Fe
Railway Company (doc. 113), is GRANTED; and

It is further ORDERED that the motion for summary judgment by
defendant/third-party plaintiff, The Burlington Northern Santa Fe
Railway Company with respect to its Third-Party Complaint (doc. 24)
as against third-party defendant Chemical Lime Company of Arizona
on the issue of the duty to defend is GRANTED and the Clerk shall
enter judgment accordingly.

It is FURTHER ORDERED that within 30 days of the date of this
Order BNSF shall file and serve a motion for attorneys' fees and
costs, etc., consistent with this Order and with the 1991 ITA.
Chemical Lime shall have 20 days from the date of service in which
to file and serve its Response.  BNSF shall then have ten days from
the date of service of Chemical Lime's Response in which to file
and serve a Reply, if any.

DATED this 23rd day of May, 2007.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record

- 24 -