1   WO

2

3

4

5

6

7              IN THE UNITED STATES DISTRICT COURT

8              FOR THE DISTRICT OF ARIZONA

9

10

11

12   Steven Schrum,                    )
                                       )
13              Plaintiff,             )     No. CIV 04-0619-PHX-RCB
                                       )
14         vs.                         )        O R D E R
                                       )
15   The Burlington Northern Santa )
     Fe Railway Company, a            )
16   corporation,                      )
                                       )
17              Defendant.             )
     _____)
18   The Burlington Northern Santa )
     Santa Fe Railway Company,        )
19   a corporation,                    )
                                       )
20        Third Party Plaintiff        )
                                       )
21         vs.                         )
                                       )
22   Chemical Lime Company of          )
     Arizona, a corporation; ABC       )
23   Corporations I-IV, fictitious )
     corporations,                     )
24                                     )
          Third Party Defendants.)
25   _____)

26        Currently pending before the court is an "Application for

27   Attorneys' Fees and Costs" by defendant and third-party plaintiff,

28   the Burlington Northern Santa Fe Railway Company ("BNSF") (doc.

132).  BNSF is requesting attorneys' fees of $219,045.00 "with interest thereon until paid."  *Id.* at 3.  Third-party defendant, Chemical Lime Company of Arizona ("Chemical Lime"), responds that the court should deny this motion in its entirety due to BNSF's non-compliance with LRCiv. 54.2.  Alternatively, for a host of reasons which will be more fully discussed herein, Chemical Lime contends that the court should reduce the requested fees by $164,358.00.  The resultant fee award would then total $54,687.00.  "[O]r, in any event," Chemical Lime believes that the fee award should be "no more than . . . $65,000[.]" Resp. (doc. 142) at 12 and 13.

### *Background*

In *Schrum v. Burlington Northern and Santa Fe Railway*, 2006 WL 1371634 (D.Ariz. 2006) ("*Schrum I*"), familiarity with which is assumed, this court granted summary judgment in favor of BNSF on plaintiff's claims brought pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*  Subsequently, the court granted BNSF's motion for reconsideration and also granted summary judgment in BNSF's favor as to the third-party complaint, finding that under the 1991 Industry Track Agreement ("ITA") Chemical Lime had a duty to defend BNSF in the underlying FELA action.  *Schrum v. Burlington Northern Santa Fe Railway Co.*, 2007 WL 1526717 (D.Ariz. 2007) ("*Schrum II*").

Additionally, in *Schrum II*, the court ordered BNSF to "file and serve a motion for attorneys' fees and costs, etc., consistent with th[at] Order and with the 1991 ITA ."  *Id.* at *12. Thereafter, BNSF filed the pending "Application for Attorneys' Fees and Costs" (doc. 132).

1    To support this fee request, initially BNSF filed a redacted
2    "Task-Based Itemized Statement of Fees and Expenses" ("Fee
3    Statement").   Chemical Lime sought, *inter alia*, to have the court
4    deny attorneys' fees for all the redacted time or "similarly
5    insufficient entries," *i.e.* $65,043.00.  Resp. (Doc. 142) at 6.
6    Thereafter, BNSF filed a separate motion "request[ing] that the
7    Court conduct an *in camera* inspection of BNSF's" Fee Statement.
8    Mot. (doc. 145) at 1.  Finding that such an inspection would
9    "assist the court in resolving BNSF's Application for Attorneys'
10   Fees and Costs[,]" the court granted that motion.  Doc. 149 at 2.
11   Thus, in analyzing the parties' respective arguments, the court
12   also has carefully examined BNSF's *un*redacted Fee Statement.

### *Discussion*

13
14   Chemical Lime's objections readily can be grouped into two
15   broad categories - procedural and substantive.  Chemical Lime's
16   procedural objections form the basis for its argument that the
17   court should deny this application in its entirety.  Therefore, the
18   court will address those objections first.  If those procedural
19   objections are unfounded, the court will turn to Chemical Lime's
20   alternative argument that for various substantive reasons BNSF's
21   fee request should be "significantly reduced[.]"  See Resp. (doc.
22   142) at 2.

### *I.  Procedural Challenges*

23
24   Chemical Lime argues that the court should deny this
25   fee request "in its entirety because BNSF has not filed a proper
26   motion . . . with this Court[]" in that it has not fully complied
27   with the requirements of LRCiv. 54.2.  See Resp. (doc. 142) at 2.
28   Chemical Lime's first procedural objection is picayune.  It notes

1   that BNSF styled its fee request as an "application" as opposed to

2   a motion.  The court's order did specifically direct BNSF to file a

3   "*motion* for attorneys' fees and costs[.]" <u>Schrum II</u>, 2007 WL

4   1526717, at *12 emphasis added).  LRCiv. 54.2 uses the same

5   nomenclature.  <u>See</u>, <u>e.g.</u>, LRCiv. 54.2(b)(1) (emphasis added)

6   ("Unless otherwise provided by statute or court order . . . , the

7   party seeking an award of attorneys' fees . . . *shall* file and

8   serve a *motion* for award of attorneys' fees[.]")  Although BNSF's

9   request is more properly styled as a motion, rather than an

10  application, the court will overlook this minor technical flaw.

11      The court cannot so easily overlook Chemical Lime's other

12  procedural objections though.  LRCiv. 54.2 sets forth in exhaustive

13  detail the requirements for filing an attorneys' fee motion in this

14  District.  LRCiv. 54.2(c) dictates that a party seeking fees file a

15  memorandum of points and authorities discussing "the following

16  matters with appropriate headings and in the order listed[;]" (1)

17  "eligibility," (2) "entitlement," and (3) "reasonableness of

18  requested award."  LRCiv. 54.2(c)(1)-(3).  In turn, LRCiv.

19  54.2(c)(3) lists 13 factors "bearing on the reasonableness of the

20  requested attorneys' fee award," which a party seeking fees "should

21  discuss, as appropriate[.]" LRCiv. 54.2(c)(3).

22      LRCiv. 54.2(d) sets forth equally detailed requirements as to

23  the supporting documentation which must be included in a fee

24  motion.  A party seeking attorneys' fees must provide:  (1) a

25  "Statement of Consultation[;]" (2) a copy of the fee agreement if

26  written and, if oral, a "full recitation" of that agreement; (3) a

27  Fee Statement in the prescribed format, with the requisite

28  "description of services rendered[;]" (4) an affidavit of moving

- 4 -

counsel; and (5) "[a]ny other affidavits or evidentiary matter deemed appropriate . . . or required by law." LRCiv. 54.2(d)(1)-(5). Additionally, "at a minimum," the affidavit of moving counsel must include the following: (1) "Background[;]" (2) "Reasonableness of Rate[;]" and (3) "Reasonableness of Time Spent and Expenses Incurred." LRCiv. 54.2(4)(A)-(C).

Chemical Line is correct in noting that BNSF's initial memorandum did not comply with LRCiv. 54.2(c) because it did not include the three "appropriate headings" which that Rule mandates. However, as BNSF is quick to point out, substantively its memorandum includes the required information, albeit not in extensive detail. Likewise, attorney Thorpe's affidavit, while again not including the "appropriate headings[,]" also mentions the three factors specified in LRCiv. 54.2(c). Moreover, as part of its Reply, BNSF provided a "Supplement to its Application for Attorneys' Fees[,]" which makes explicit what is implicit in its prior filings. That Supplement expressly identifies and discusses each of the three factors which LRCiv. 54.2(c) designates. Thus, at this juncture, the court finds that BNSF is in compliance with LRCiv. 54.2(c).

Chemical Line also challenges the sufficiency of this fee motion because purportedly BNSF's supporting documentation is incomplete in that it did not provide: "1) [a] statement of consultation, 2) the fee agreement, 3) a Fee Statement, and 4) an affidavit [from] moving counsel[.]" Resp. (doc. 142) at 3-4. As to the first item, BNSF describes this objection as "completely disingenuous" given its "numerous" efforts, all of which have been rejected, to get Chemical Lime to pay BNSF's attorneys' fees.

1   Reply (doc. 144) at 4.   Be that as it may, the fact remains that

2   LRCiv. 54.2(d) is explicit in requiring a "Statement of

3   Consultation."   Indeed, in accordance with that Rule, "[n]o motion

4   for [an] award of attorneys' fees will be considered unless" such a

5   Statement is attached to the supporting memorandum.   LRCiv.

6   54.2(d)(1); see also In re Elegant Custom Homes, Inc., 2007 WL

7   1991673, at *1 (D.Ariz. 2007) (denying attorneys' fee  motion for

8   attorneys' fees for failure to file Statement of Consultation).

9   Nonetheless, as it did in Rudebusch v. Arizona, 2007 WL 2774482, at

10  *1 (D.Ariz. 2007), the court is willing to "overlook th[is]

11  procedural irregularity this time[,]" especially because BNSF did

12  file such a statement as part of its Reply.   See Supp. (doc. 144-

13  2), exh. 2 thereto.   Similar to Rudebusch, "counsel are

14  forewarned[,]" however, "that future fee motions must include this

15  Statement [in the first instance], or the court will not consider

16  them."   See Rudebusch, 2007 WL 2774482, at *1.

17      As with the Statement of Consultation, originally BNSF did not

18  comply with LRCiv. 54.2(d)(2) with respect to any fee agreement it

19  may or may not have had with its counsel herein.   That Rule

20  unequivocally requires that "[a] complete copy of any written fee

21  agreement, or a full recitation of any oral fee agreement, . . . be

22  attached to the supporting memorandum."   LRCiv. 54.2(d)(2).   That

23  Rule further provides that "[i]f no fee agreement exists, then

24  counsel must attach a statement to that effect."   Id.   BNSF did

25  not attach such a statement to its original motion, but one is

26  included as part of BNSF's later filed Supplement.   See Supp. (doc.

27  144-2), exh. 3 thereto.   The court will, once again, overlook this

28  procedural deficiency because BNSF has provided the required

- 6 -

1  information, although not in its initial submissions.

2       On the other hand, Chemical Lime's assertion that BNSF did not

3  comply with LRCiv. 54.2(d) because it did not include a Fee

4  Statement, or an affidavit of moving counsel, borders on the

5  frivolous.  BNSF provided both.  Originally BNSF filed a 151 page

6  breakdown of the legal services rendered; the date on which they

7  were rendered; the person rendering them; the time spent and the

8  amount billed.  Thorpe Aff. (doc. 132-3), exh. A thereto (doc. 132-

9  4).  Likewise, BNSF filed an affidavit of moving counsel in the

10 required format.  See id.  Thus, the court declines to deny BNSF's

11 attorneys' fees motion "in its entirety[,]" as Chemical Lime urges,

12 for these relatively minor procedural irregularities.  See Resp.

13 (doc. 142) at 4.

14      As mentioned at the outset, in its original form BNSF's Fee

15 Statement was redacted.  Chemical Lime maintains that the court

16 should "deny" attorneys' fees for "all . . . that . . . redacted[]"

17 time because LRCiv. 54.2(e)(2) requires, inter alia, that "[t]he

18 party seeking an award of fees . . . adequately describe the

19 services rendered so that the reasonableness of the charge can be

20 evaluated."  LRCiv. 54.2(e)(2).  As previously mentioned, however,

21 since its original submissions, BNSF has filed an unredacted Fee

22 Statement.  Consequently, the court will not deny attorneys' fees

23 simply because of those initial redacted entries.  In any event,

24 the court observes that even if it deemed the redacted time

25 descriptions "incomplete, or if such descriptions fail[ed] to

26 adequately describe the service rendered," the remedy would be

27 reduction of any fee award, not, as Chemical Lime seeks, complete

28 denial of a fee award.  See LRCiv. 54.2(e)(2).

1    To conclude, insofar as Chemical Lime's procedural objections
2  are concerned, obviously it would have been preferable for BNSF to
3  have fully complied with LRCiv. 54.2 when it first filed this
4  motion, rather than through later supplementation.  Given BNSF's
5  initial substantial compliance, combined with the fact it fully
6  complied with that Local Rule through later supplementation, the
7  court will not deny this attorneys' fee motion on procedural
8  grounds.  By the same token, though, the requirements of LRCiv.
9  54.2 "are not advisory, but mandatory." <u>Societe Civile Succession</u>
10  <u>Richard Guino v. Beseder Inc.</u>, 2007 WL 3238703, at *7 (D.Ariz.
11  2007).  Consequently, the court will not be so lenient in
12  overlooking non-compliance in future attorneys' fee motions filed
13  by defense counsel.

14  ***II.  Substantive Challenges***

15    Having found insufficient merit to Chemical Lime's procedural
16  arguments, the court will next examine Chemical Lime's substantive
17  arguments for reducing any attorneys' fees awarded herein.  Before
18  doing so, though, in accordance with LRCiv. 54.2(c)(1) and (2), the
19  court will briefly touch upon BNSF's eligibility for and
20  entitlement to recovery of its attorneys' fees.

21    ***A.  "Eligibility"/"Entitlement"***

22    BNSF relies upon three separate sources for this motion.
23  First, it points to the plain language of the 1991 ITA.  When a
24  duty to defend arises under paragraph eight of that agreement,
25  Chemical Lime is required to "pay all the costs incident to such
26  defense including, but not limited to, attorneys' fees, . . . ,
27  [and] litigation expenses[.]" Resp. (doc. 142), exh. B thereto
28  (doc. 142-4) (1991 ITA) at 5, ¶ 8.  Second, it notes that in <u>Schrum</u>

1  <u>II</u>, this court expressly ordered BNSF to file a motion for

2  "attorneys' fees and costs . . . consistent with th[at] Order and

3  with the 1991 ITA." <u>Schrum II</u>, 2007 WL 1526717, at *12.  Third,

4  BNSF is relying upon A.R.S. § 12-341.01 which provides in relevant

5  part that "[i]n any contested action arising out of a contract,

6  . . . , the court may award the successful party reasonable

7  attorney fees." A.R.S. § 12-341.01 (West 2003).  In light of the

8  foregoing, wisely, Chemical Limes does not dispute BNSF's

9  eligibility for or entitlement to attorneys' fees in the first

10  place.  Rather, the thrust of Chemical Lime's argument is that the

11  requested fees are not reasonable.

12  **B. *"Reasonableness of Requested Award"***

13  Reasonableness has two parts.  First, the court must determine

14  the reasonableness of the hourly billing rate.  <u>Schweiger v. China</u>

15  <u>Doll Rest., Inc.</u>, 138 Ariz. 183, 187, 673 P.2d 927, 931

16  (Ariz.Ct.App. 1983)[1] ("The beginning point in a development of a

17  reasonable fee is the determination of the actual billing rate

18  which the lawyer charged in the particular matter.")  Second, it

19  must determine the reasonableness of the hours expended on the

20  case.  <u>Id.</u> at 188, 673 P.2d at 932.  Informing this inquiry is the

21  general proposition that "[t]he prevailing party . . . is 'entitled

22  to recover a reasonable attorney's fee for every item of service

23  which, at the time rendered, would have been undertaken by a

24  reasonable and prudent lawyer to advance or protect his client's

25  interest[.]'" <u>Id.</u> (quoting <u>Twin City Sportservice v. Charles O.</u>

26  <u>Finley & Co.</u>, 676 F.2d 1291, 1313 (9th Cir. 1982)).  It is against

27  _____

28  [1]   As noted in <u>Schrum II</u>, in accordance with the 1991 ITA, Arizona law governs here.  <u>See</u> <u>Schrum II</u>, 2007 WL 1526717, at *4.

this legal backdrop which the court has analyzed the parties'
respective arguments and scrutinized BNSF's 137 page unredacted Fee
Statement.

### 1.  Hourly Billing Rate

As to the hourly billing rate, "[u]nder Arizona law, 'in
corporate and commercial litigation between fee-paying clients,
there is no need to determine the reasonable hourly rate prevailing
in the community for similar work because the rate charged by the
lawyer to the client is the best indication of what is reasonable
under the circumstances of the particular case.'" Hummingbird
Defense Systems, Inc. v. Ye, 2007 WL 4200751, at *4 (D.Ariz. 2007)
(quoting Schweiger, 138 Ariz. at 187-188, 673 P.2d at 931-932).
Here, as the "primary billing attorney in this case," attorney
Thorpe avers that "[i]n most cases, the fees are calculated
primarily based on the hourly-rate charges for the legal services."
Mot. (doc. 132), exh. B thereto (Affidavit in Support of
Application for Attorneys' Fees and Costs) (doc. 132-3), at 5,
¶ 10.

Because of what it deemed to be "the substantial volume of
work required . . . , Fennemore Craig employed a team of attorneys
and staff to work on this case." Id. at 3, ¶ 4.  The four
"shareholders and directors" who worked on this case billed at an
hourly rate of $180.00 in 2004-2006 and at an hourly rate of
$200.00 in 2007.  Id. at 2, ¶¶ 3; 4(a); 4(b) and 4(c).  The three
associates who worked on this case billed $140.00 per hour during
the years 2004-2006.  Id. at 3, ¶¶ 4(d)-4(f).  Two paralegals also
worked on this case.  One is a nurse-paralegal whose hourly rate
was $115.  See id. at 3, ¶ 4(g).  The other paralegal, who is not a

nurse, had a billable rate of $115 in 2004, "$125.00 in 2005 and
. . . $140 in 2006." Id. at 3, ¶ 4(h).

"BNSF has paid for all fees and costs Fennemore Craig rendered
and incurred on behalf of BNSF[,]" id. at 4, ¶ 5, which is the best
indication of "what is reasonable[]" here. See Hummingbird
Defense, 2007 WL 4200751, at *4 (internal quotation marks and
citation omitted). Evidently, Chemical Lime agrees because, with
one exception which will be discussed momentarily, it is not
contesting the hourly billing rates. Therefore, at least in terms
of the attorneys, any fees awarded herein will be based upon the
rates recited above -- rates which the court finds imminently
reasonable.

The one narrow dispute as to hourly billing rates pertains to
the $140.00 charged by the non-nurse paralegal in 2006. Through
the affidavit of attorney James K. Kloss, a self-described "expert
witness" regarding this fee motion, Chemical Lime contends that
that particular rate "is at least 25% in excess of what '[he]
consider[s] to be a reasonable billing rate for experienced
paralegal time in Arizona in this type of litigation." Resp. (doc.
142), exh. D thereto (doc. 142-6) (Aff. Of James K. Kloss), at 1, ¶
2; and at 3, ¶ 10(C). Attorney Kloss bases that opinion, in part,
upon the fact that the other paralegal who worked on this case, and
who is also a nurse, had an hourly billing rate of $115.00.
Attorney Kloss further opines that "[i]t is custom and practice in
the industry for nurse-paralegals to bill . . . at higher rates
than 'normal' paralegals because of the expertise associated with
being a nurse." Id. Chemical Lime adds that the $140.00 hourly
rate for this paralegal in 2006 is the same hourly rate BNSF bills

1 for its associates.

2     There are a variety of factors, apart from the fact that one

3 paralegal is a nurse and another is not, which may contribute to

4 different billing rates, including experience.  The same is true

5 when comparing paralegal billing rates to associates' rates.  Thus,

6 the court declines to speculate as to the reasons for the varying

7 billing rates which attorney Kloss has noted.  Speculation is

8 particularly inappropriate given the rule set forth at the outset

9 that the "rate charged . . . is the best indication of what is

10 reasonable under the circumstances of the particular case.  See

11 Hummingbird Defense Systems, 2007 WL 4200751, at *4 (internal

12 quotation marks and citation omitted).  Thus, the court finds that

13 the billing rates for the paralegals are reasonable as well.

14              ***2.  Hours Reasonably Expended***

15     There are five discrete categories of time for which Chemical

16 Lime believes that BNSF should not be entitled to recover any

17 attorneys' fees whatsoever.  In particular, Chemical Lime believes

18 that BNSF is not entitled to recover for time billed for:  (1)

19 "Tasks Spent Prior to Tendering its Defense[;]" (2) "Tendering the

20 Defense[;]" (3) "Litigating . . . the Indemnity and Duty-to-Defend

21 Issues[;]" (4) "Tasks Unrelated to this Litigation[;]" and (5) the

22 pending Ninth Circuit appeal.  Resp. (doc. 142) at 4; 6; 7; 8; and

23 11.  The court will address these billing categories seriatim.  It

24 will then turn to Chemical Lime's more broad based arguments,

25 attacking first the sufficiency of BNSF's billing entry

26 descriptions and, second, the reasonableness of the hours expended.

27            ***a.  "Prior to Tendering its Defense"***

28     Without citing to any legal authority, Chemical Lime maintains

1  that BNSF should not be allowed to recover its attorneys' fees,

2  totaling $39,121.50, for time expended prior to March 15, 2005, the

3  date it tendered its defense.  BNSF challenges the factual accuracy

4  of Chemical Lime's positions, and decries it as "another

5  meaningless diversion."  Reply (doc. 144) at 6.

6      As thoroughly discussed in Schrum II, Chemical Lime was

7  recalcitrant in terms of accepting BNSF's tenders of defense.  See

8  Schrum II, 2007 WL 1526717, at *3; and at *11.  Thus, to imply, as

9  Chemical Lime does, that on March 15, 2005, BNSF simply tendered

10 its defense for the first time and Chemical Lime accepted that

11 tender, is not entirely accurate.  Rather, Chemical Lime, as its

12 insurance carrier states, was "placed on notice by [BNSF] . . .

13 back in September 2003[,]" of plaintiff's allegations.  Reply (doc.

14 144), exh. B thereto (doc. 144-2) at 42.  Had Chemical Lime

15 accepted tender at that time, BNSF's fees in this regard would have

16 been de minimis.  Instead, as outlined in BNSF's Fee Statement,

17 between March 4, 2004, and March 15, 2005, it expended a relatively

18 significant amount of time on the underlying action and the third-

19 party action.

20     What is more, as BNSF also points out, the 1991 ITA contains

21 broad "hold harmless" language, wherein Chemical Lime must "pay all

22 the costs incident to . . . defense including, but not limited to,

23 attorneys' fees, investigators' fees, [and] litigation expenses[.]"

24 Resp. (doc. 142), exh. B thereto (doc. 142-4) at 5, Art. I, ¶ 8

25 (emphasis added).  That Agreement does not limit Chemical Lime's

26 obligations to paying only post tender defense costs.  Given

27 Chemical Lime's delay in accepting BNSF's tenders of defense, along

28 with the broad language of the 1991 ITA, the court will allow BNSF

- 13 -

1  to recover for time expended prior to tender.[2]

2  ### b. Tendering the Defense

3  The 1991 ITA provides for the recovery of attorneys' fees "for
4  the *defense of any lawsuit*[.]" Id. (emphasis added).  Arguing that
5  fees incurred in actually tendering the defense do not come within
6  the ambit of that language, Chemical Lime asserts that BNSF should
7  not be allowed to recover the $446.00 which BNSF is seeking for
8  time expended in tendering its defense.

9  Without explanation, BNSF responds that "the fees are clearly
10 contemplated by the Court's Order and the [1991 ITA]."  Reply (doc.
11 144) at 7.  Alternatively, BNSF asserts that fees incurred in
12 tendering its defense are recoverable pursuant to A.R.S. § 12-
13 341.01.  From a policy standpoint, BNSF further asserts that not
14 requiring Chemical Lime to pay these fees "would encourage parties
15 to avoid their duties to defend and indemnify because they could do
16 so without consequence."  Id.

17 The expansive language of the 1991 ITA encompasses fees
18 incurred in tendering a defense.  As previously stated, that
19 Agreement requires Chemical Lime to "pay all the costs *incident to*
20 *. . . defense* including, but not limited to, attorneys' fees[.]"
21 Resp. (doc. 142), exh. B thereto (doc. 142-4), at 5, Art. I, ¶ 8
22 (emphasis added).  Surely fees incurred in actually tendering a
23 defense are "incident to such defense[,]" and hence within the
24 purview of that Agreement.  See id.  In allowing recovery for fees
25 incurred in tendering BNSF's defense, the court also gives some

26 _____

27     [2]     Such recovery will be allowed so long as it is otherwise reasonable –
28 a determination which the court will separately make after deciding for which of
    the challenged billing categories recovery can be had.

1  credence to BNSF's policy argument.   Therefore, despite Chemical

2  Lime's argument to the contrary, the court finds that BNSF is

3  entitled to recover attorneys' fees for time expended (again,

4  assuming this time is otherwise reasonable) in actually tendering

5  its defense.

6  ### c.  Litigating Indemnity & Duty-to-Defend Issues

7         Noting that the 1991 ITA does not contain a "separate fee

8  provision" governing disputes between the parties as to the

9  indemnity and duty-to-defend issues, Chemical Lime contends that

10  BNSF is not entitled to recover fees of $19,156.00 incurred in

11  litigating those issues.   Resp. (doc. 142) at 7.

12        BNSF makes the same argument which it did in arguing for

13  recovery of its fees for time billed tendering the defense – such

14  fees are contemplated by the ITA and there are strong policy

15  reasons for allowing the recovery of such fees.   The court agrees.

16  As with the fees incurred in tendering its defense, the fees BNSF

17  incurred in litigating the indemnity and duty-to-defend issues,

18  come within the broad scope of the ITA.   Further, the policy behind

19  allowing recovery of these particular litigation fees is, perhaps,

20  even more compelling than for allowing recovery for fees incurred

21  in tendering the defense.   Allowing a party to "challenge its duty

22  to defend and postpone payment for years, without" regard to

23  "having to pay the costs associated" with that strategy would, as

24  BNSF maintains, "be an unintended" result, id. at 7, and one which

25  the court will not countenance.

26  ### d.  Tasks "Unrelated" to Litigation

27        Next, Chemical Lime objects to fees in the amount of $530.00

28  for "tasks unrelated to this litigation."   Resp. (doc. 142) at 8.

1   As a general proposition, the court agrees.  The only supposedly

2   unrelated tasks which Chemical Lime mentions in its response are

3   for time expended litigating the issue of plaintiff's return to

4   work.  An independent review of BNSF's Fee Statement reveals that

5   of the entries which Chemical Lime identified as being "unrelated,"

6   at least on the face of it, four do not pertain to plaintiffs'

7   return to work.  See Resp. (doc. 142), exh. A thereto at 68

8   (7/27/050); at 95 (12/17/05); and at 96 (12/22/05 and 12/23/05).

9        Given, as BNSF is quick to point out, that plaintiff's failure

10  to mitigate his damages and seek alternate employment was an issue

11  in the underlying litigation, the court disagrees that time spent

12  on that issue was "unrelated to this litigation[,]" and hence not

13  compensable.  See id.  As to the four entries which do not pertain

14  to the mitigation issue, the court is satisfied that those tasks

15  are related to this litigation.  For example, on July 27, 2005,

16  attorney Rivera "draft[ed] a letter to opposing counsel regarding

17  plaintiff's claim that he was represented by Fennemore Craig

18  [BNSF's counsel herein] in [a] previous matter[.]" Resp. (doc.

19  142), exh. A thereto at 68 (7/27/05).  Plainly, this potential

20  conflict is relevant to the current litigation.  Thus, because the

21  court disagrees with Chemical Lime and finds that all of the

22  supposedly "unrelated" tasks were, in fact, related to this

23  litigation, BNSF can recover its fees for time spent on all such

24  tasks.

25                    ***e.  Appellate Fees***

26       Some clarification is necessary before addressing Chemical

27  Lime's argument that BNSF is not entitled to recover attorneys'

28  fees "for the appeal currently before the 9th Circuit Court of

Appeals[.]" Resp. (doc. 142) at 11.  Actually there are two pending appeals.  First, there are cross-appeals by plaintiff Schrum and BNSF filed on June 15, 2006 and June 16, 2006 respectively, in the underlying FELA action.  A second appeal was filed by Chemical Lime, on June 22, 2007, from this court's order in Schrum II and the judgment entered thereon.  However, because the $38,966.00 which BNSF is seeking in fees for appellate legal services were incurred between June 15, 2006 and January 31, 2007, these fees pertain to the cross-appeals in the FELA action.

Reasoning that Schrum II addressed the duty to defend and not attorneys' fees related to the "pending appeal[,]" Chemical Lime claims that this court lacks jurisdiction to award such fees, and that such an award is not "ripe."  Resp. (doc. 142) at 11. Therefore, Chemical Lime urges the court to deny BNSF's motion to the extent it is seeking fees for appellate legal services.

BNSF baldly asserts that "Chemical Lime is absolutely wrong that this Court does not have the authority to award" it fees incurred in defending itself on appeal.  Reply (doc. 144) at 10. In making this assertion, BNSF is relying upon this court's holding in Schrum II that Chemical Lime had a duty to defend BNSF.  Thus, BNSF reasons that it "was required to incur the fees associated with plaintiff's appeal because Chemical Lime refused to accept its responsibility to defend BNSF in the Ninth Circuit."  Id. at 11.

Preliminarily, the court notes that there is no merit to Chemical Lime's assertion that this court lacks jurisdiction.  The Ninth Circuit has unequivocally held that "a district court still has jurisdiction, even after [an] appeal is filed but before the appeals court has ruled, to grant attorneys' fees."  Cazares v.

1  Barber, 959 F.2d 753, 755-56 (9ᵗʰ Cir. 1992) (citation omitted)

2  (emphasis in original).  Thus, despite Chemical Lime's contrary

3  suggestion, the filing of the notices of appeal did not divest this

4  court of jurisdiction over this attorneys' fee motion.

5      On the other hand, the court agrees with Chemical Lime that an

6  award of attorneys' fees for these appellate services would be

7  premature especially in light of Chemical Lime's pending appeal of

8  Schrum II.  Therefore BNSF's motion for attorneys' fees is denied

9  without prejudice to renew to the extent it is seeking to recover

10  for time expended for appellate legal services.

11                *f.  Sufficiency of Billing Descriptions*

12      LRCiv. 54.2(e)(2) mandates that a Fee Statement "adequately

13  describe the services rendered so that the reasonableness of the

14  charge can be evaluated."  LRCiv. 54.2(e)(2); see also Hummingbird

15  Defense Systems, 2007 WL 4200751, at *4 (internal quotation marks

16  and citation omitted) ("In order to make a determination that the

17  hours claimed are justified, the fee application must be in

18  sufficient detail to enable the court to assess the reasonableness

19  of the time incurred.") Based upon BNSF's original redacted Fee

20  Statement, Chemical Lime argued that the billing descriptions were

21  "incomplete and inadequate[,] . . . mak[ing] it impossible to

22  determine the reasonableness of the [requested] fee[s]."  Resp.

23  (doc. 142) at 5.  Accordingly, Chemical Lime believes that the

24  court should deny all fees for redacted entries, totaling $65,043.

25      As earlier noted, with its Reply BNSF filed a separate motion,

26  which the court granted, for in camera review of BNSF's unredacted

27  Fee Statement.  By granting this motion the court effectively

28  rendered moot any argument that BNSF's fees should be reduced or

denied because initially they were redacted.  Nonetheless, even in its unredacted form, the court finds that some of BNSF's billing descriptions do not contain the specificity which LRCiv. 54.2(e)(2) demands.  The most glaring omission arises from BNSF's failure to explain "the activities associated with [the] preparation" of a given pleading as LRCiv. 54.2(e)(2)(C) requires.  BNSF's counsel merely indicated, for example, "Work on BNSF's Answer[,]" or "Work on motion to strike[,]" or "Draft discovery requests."  Unredacted Fee Statement Fee Statement at 2 (4/25/04); and at 74 (10/19/05) and (10/20/05).  A careful examination of BNSF's unredacted Fee Statement shows that it is replete with entries which do not comport with the stringent requirements of LRCiv. 54.2(e)(2). Accordingly, the court will reduce any fees awarded herein by ten percent (10%) for failure to fully comply with that Local Rule. This reduction is wholly justified because the lack of "adequate[] descri[ptions] [of] the services rendered" hindered the court's ability to make the critical reasonableness determination.  See LRCiv. 54.2(e)(2).

### g.  *"Excessive" Fees*

Upon receipt of this motion seeking over $219,000.00 in attorneys' fees, Chemical Line retained attorney James K. Kloss to "opine on the reasonableness of BNSF's requested . . . fees." Resp. (doc. 142) at 9.  Mr. Kloss claims that those fees are "not only excessive, but wildly excessive."  Id., exh. D (Aff. Of James K. Kloss) thereto (doc. 142-6) at 4, ¶ 10(D).  Purportedly the requested fees are excessive in terms of the number of people working on the case, the time spent on various tasks, and the number of conferences among personnel.  Further contributing to Mr.

1   Kloss' opinion of excessive fees are "inappropriate charges" which
2   should have been "absorbed" as "overhead[,]" and paralegals billing
3   for secretarial tasks.   Id. at 4, ¶ 10(E).

4       In his affidavit, Mr. Kloss highlights a few tasks for which
5   he believes the charges were excessive.   He notes, for example that
6   one associate "billed over five hours to draft and file an answer,"
7   a task which Mr. Kloss asserts "should be accomplished in less than
8   an hour[]" in a case of this type.   Id. at 5, ¶ 10(G).   Mr. Kloss
9   also challenges the expenditure of "approximately 40 hours . . . by
10  four different timekeepers on the initial disclosure statement[.]"
11  Id.   Preparation of that document, according to Mr. Kloss, "should
12  have been carried out by at most two people, with a time
13  expenditure certainly of less than 10 hours."   Id.   Finally, Mr.
14  Kloss sweepingly asserts that there was "excessive time spent on
15  every motion that was filed, in part because multiple timekeepers
16  overlapped on tasks that could have and should have been carried
17  out by one person or at most two."   Id.

18      Attorney Kloss posits that an "initial budget. . .should have
19  been submitted to the client of between $50,000 and $75,000."   Id.
20  at 4, ¶ 10(D).   He further posits that in this case, which was
21  resolved on summary judgment, he "would have expected the actual
22  bills to come in under budget."   Id.   Evidently based upon this
23  budget model, Mr. Kloss "estimate[s] that reasonable fees,[]"
24  excluding the appeal, "would have been approximately $65,000."   Id.
25  at 7-8, ¶ 11.   Express[ing] "surprise[] if the bills had been as
26  high as $100,000[,]" attorney Kloss concludes that "any billing
27  over [that amount] is not reasonable and is significantly
28  excessive."   Id. at 8, ¶ 11.

1   Because this litigation has: (1) been pending for over three

2   years; (2) involved multiple claims and parties; and (3) it

3   prevailed on both summary judgment motions, BNSF maintains that its

4   requested fees are reasonable.  Furthermore, BNSF urges the court,

5   in essence, to discount Mr. Kloss' opinion because he is "tr[ying]

6   to apply some undescribed generic formula for setting the fee, when

7   in reality, the case had unique and complicated factual and legal

8   issues."  Reply (doc. 144) at 10.

9        The court does not adopt Mr. Kloss's view that a reasonable

10  fee here would be "approximately $65,000.00." See Resp. (doc. 142),

11  exh. D thereto (doc. 142-6) at 8, ¶ 11.  However, based upon its

12  own detailed review of BNSF's unredacted Fee Statement, its

13  intimate familiarity with this four year litigation, and taking

14  into account the relevant reasonableness factors listed in LRCiv.

15  54.2(c)(3), the court finds merit to some of Chemical Lime's

16  challenges to the requested fees.

17       "Once a party submits an itemized list of fees with sufficient

18  detail and establishes entitlement to fees," as BNSF has done here,

19  "the burden shifts to the party challenging the fees to show that

20  the fees are unreasonable." Best Western International, Inc. v.

21  Patel, 2008 WL 544820, at *4 (D.Ariz. 2008) (citing Nolan v.

22  Starlight Pines Homeowners Ass'n, 216 Ariz. 482, 167 P.3d 1277,

23  1286 (Ariz.Ct.App. 2007)).  Significantly, "[a]n opposing party

24  does not meet [that] burden merely by asserting broad challenges to

25  the application." Nolan, 216 Ariz. at 491, 167 P.3d at 1286

26  (internal quotation marks and citations omitted).  Therefore, "[i]t

27  is not enough . . . simply to state, for example, that the hours

28  claimed are excessive and the rates submitted too high." Id.

- 21 -

1   (internal quotation marks and citations omitted).  Rather, as the

2   party opposing this fee request, it is incumbent upon Chemical Lime

3   to "present *specific* objections to the reasonableness of the fees

4   requested."  See id. (emphasis added).

5       Despite the rather general averments in Mr. Kloss' affidavit,

6   for the most part Chemical Lime has met its burden of at least

7   "present[ing] specific objections to the reasonableness of

8   [certain] of the fees requested."  See id.  Chemical Lime

9   scrutinized BNSF's redacted Fee Statement with a fine tooth comb.

10  It then assigned a code to each disputed billing entry.  At this

11  juncture the relevant codes pertain to entries which Chemical Lime

12  viewed as "duplicate . . . and/or multiple timekeepers on [the]

13  same task; . . . "[e]xcessive time on task;" and "secretarial tasks

14  billed as paralegal time."  Resp. (doc. 142), exh. A thereto

15  (redacted Fee Statement) at 1, *note.  Of course, whether those

16  specific objections are valid is a separate inquiry to which the

17  court will turn momentarily.

18      Before doing so, however, it should be noted that Chemical

19  Lime did not specifically identify where in BNSF's 151 page

20  redacted Fee Statement there exist "inappropriate charges" for firm

21  overhead.  See Resp. (doc. 142), exh. D (doc. 142-6) thereto (Kloss

22  Aff.) at 4, ¶ 10(E).  This broad challenge does not suffice to meet

23  Chemical Lime's burden as the party disputing the reasonableness of

24  these particular fees.  Therefore, the court will not consider this

25  objection.  Moreover, from its own review of BNSF's Fee Statement,

26  it is not readily apparent that BNSF billed for matters which might

27  be considered overhead.

28      Likewise, Chemical Lime was not specific in challenging as

1   excessive the number of conferences among billing personnel.

2   Instead it is relying upon Mr. Kloss' sweeping averment on that

3   point.   Therefore, the court also declines to consider this

4   objection to the reasonableness of BNSF's claimed fees.  <u>See</u>

5   <u>Signatures Network, Inc. v. Estefan</u>, 2005 WL 151928, at *5

6   (N.D.Cal. 2005) (plaintiff did not meet burden for reducing fee

7   award where it did "not explain[] which of the hours claimed by

8   defendants for intraoffice or interoffice conferences [we]re

9   duplicative[]").   However, the court will address below the other

10  challenged billing entries which Chemical Lime did specifically

11  identify.

### *I.  "Secretarial Tasks"*

13       Some of the tasks for which primarily paralegal Murphy billed

14  are secretarial or clerical in nature, and thus not recoverable as

15  part of a reasonable attorneys' fee award.  <u>See</u> <u>Semmaterials, L.P.</u>

16  <u>v. Alliance Asphalt, Inc.</u>, 2007 WL 676675, at *3 (D.Idaho 2007)

17  (citing, <u>inter alia</u>, <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288, n. 10

18  (1989) ("purely clerical or secretarial tasks should not be billed

19  at a paralegal rate, regardless of who performs them").   The

20  rationale underlying this exclusion is that "[w]ork that is

21  clerical in nature should be subsumed in a law firm's overhead."

22  <u>Synagro Technologies, Inc. v. GMP Hawaii</u>, 2007 WL 851271, at * 11

23  (D.Hawai'i 2007).   After scrutinizing the billing entries which

24  Chemical Lime identifies as secretarial tasks, the court agrees

25  that billing for nearly all of those tasks should be excluded.

26  Among those tasks which the court deems clerical or secretarial,

27  and hence not compensable as part of an attorneys' fee award, are

28  calendaring activities, scheduling depositions and bates labeling

documents.   The court therefore will deduct $3,778.00 for paralegal time billed for these and other similar tasks of a clerical nature.

### ii.   "Duplicate Time and/or Multiple Timekeepers on Same Task"

Chemical Lime asserts that the court should deny $3,908.00 of the requested fees because they were the result of "duplicate time and/or multiple timekeepers on [the] same task."  Resp. (doc. 142) at 11.  After meticulously reviewing each of the billing entries which Chemical Lime believes fall into this category, the court declines to make this reduction.  First, it does not necessarily follow that because a task is listed twice, the time spent is duplicate.  It may simply be the continuation of one task.  Or, it could mean that the time spent is excessive; but that is a separate, albeit somewhat overlapping, objection which Chemical Lime also is making.

Second, although the billing entries reflect "multiple timekeepers on [the] same task," that also does not necessarily mean that such billings were unreasonable.  This is especially so where it appears that a partner and an associate billed for the same task.  It is easy to see how partners and associates, primarily due to variations in experience, could perform the "same task" but with a different purpose.  In fact, in some instances it appears that that is what occurred here.  Therefore, after examining each of the entries which Chemical Lime deemed to involve either duplicate time or multiple timekeepers, the court is satisfied that the time spent was reasonable.  Accordingly, there will not be a reduction in fees on either of those bases.

. . .

### *iii.  Time*

Chemical Lime further claims that $11,933.00 of the requested fees are attributable to "excessive time spent on tasks[,]" and thus the court should deny recovery of those fees.  Resp. (doc. 142) at 11.  The court has studied each of the entries which Chemical Lime claims involved excessive time, focusing on the specific examples mentioned in Chemical Lime's response and in Mr. Kloss' affidavit,[3] and finds that the time spent on those particular tasks was not excessive.

Likewise, again after careful review of BNSF's unredacted Fee Statement, the court does not find persuasive Chemical Lime's argument that the time spent was excessive because there were "multiple timekeepers."  As the court recently explained in Best Western, Inc. v. Patel, 2008 WL 544820 (D.Ariz. 2008), "it is standard practice for multiple attorneys to work on a single case at the same time, particularly a case that goes on for three [or more] years[.]" Id. at *4.  Moreover, as previously alluded to, it is apparent that many times there were multiple timekeepers because attorneys were reviewing documents prepared by colleagues.  This practice is "not unreasonable[]" given that "[g]enerally, editing and revising documents are a common part of legal drafting." Id.  The court thus declines to reduce the requested fees due to supposedly excessive time.  In short, Chemical Lime has not met its burden of showing that the attorneys' fees which BNSF is seeking are in any way unreasonable.

---

[3]   In particular, the court examined each entry associated with the following tasks – time spent preparing (1) a substitution of counsel application; (2) an answer; (3) an initial disclosure statement; (4) a reply on the indemnity summary judgment motion.

### *Conclusion*

For the reasons set forth herein,

IT IS ORDERED that the motion by defendant and third-party plaintiff, the Burlington Northern Santa Fe Railway Company, for attorneys' fees (doc. 132) is GRANTED in part and DENIED in part. The motion is GRANTED to the extent BNSF is awarded $162,071.10 in attorneys' fees for time expended.[4]  The motion is DENIED without prejudice to renew insofar as BNSF is seeking attorneys' fees for time incurred in connection with the appeals pending in the Ninth Circuit Court of Appeals.

DATED this 29th day of May, 2008.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record

---

[4]    The court arrived at this amount by deducting $38,966.00, which represents time incurred for appellate work, from the total amount of fees sought – $219,045.00.  It then reduced that amount by 10% due to BNSF's failure to fully comply with LRCiv. 54.2